## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TOWER BRIDGE ADVISORS, INC.,** | ; | |
| *Plaintiff,* | ; | |
| | ; | |
| v. | ; | **CIVIL ACTION** |
| | ; | |
| **JAMES T. VOGT *and*** | ; | |
| **JEAN MCDEVITT *and*** | ; | **Case No. 2:23-CV-02007-GEKP** |
| **PINE VALLEY INVESTMENTS,** | ; | |
| **LIMITED LIABILITY COMPANY,** | ; | |
| | ; | |
| *Defendants.* | ; | |

## FIRST AMENDED COMPLAINT

Plaintiff, **TOWER BRIDGE ADVISORS, INC.** ("**Plaintiff**" or "**Tower Bridge**" or the "**Company**"), by and through its undersigned counsel, Silverang, Rosenzweig & Haltzman, LLC, hereby files this ***First Amended Complaint*** (this "**Amended Complaint**") against Defendants, **JAMES T. VOGT** ("**Vogt**"), **JEAN MCDEVITT** ("**McDevitt**"), and **PINE VALLEY INVESTMENTS LIMITED LIABILITY COMPANY.** ("**Pine Valley**" and, together with Vogt and McDevitt, "**Defendants**"), seeking damages relative to, *inter alia*, actions taken by Defendants in concert, and by each of them, that constitute misappropriation of trade secrets, breaches of covenants concerning confidential information and non-solicitation, breaches of duties of loyalty, breach of fiduciary duty, aiding and abetting such breaches, breaches of various agreements, tortious interference, conversion of confidential information, conspiracy and concert of action. In support thereof, Tower Bridge avers as below:[1]

---

[1] Tower Bridge first filed a *Complaint* (ECF 1, the "**Complaint**") on May 25, 2023. At the time Tower Bridge filed the Complaint, the unlawful activities of Vogt and McDevitt had obfuscated Tower Bridge's investigation. Since the filing of the original Complaint, Tower Bridge has uncovered, both through further internal investigation, and by way of discovery, third party and otherwise, additional facts which support: (1) the claims and allegations set forth in the original Complaint, (2) the naming of Pine Valley as a Defendant in this Amended Complaint, and (3) the addition of new counts against Defendants Vogt, McDevitt, and Pine Valley in this Amended Complaint.

PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Tower Bridge Advisors, Inc. (previously referred to as Plaintiff or Tower Bridge), is a corporation organized under and pursuant to the laws of the Commonwealth of Pennsylvania, assigned Entity Identification Number 3019085 by the Pennsylvania Department of State, with a mailing address of 101 West Elm Street, Suite 355, Conshohocken, Pennsylvania 19428.

2.      Defendant James T. Vogt (previously referred to as Vogt) is an adult individual who, upon information and belief, resides and is domiciled at 108 Sarah Drive, Mickleton, New Jersey, 08056. Defendant Vogt is a former employee of Tower Bridge and it is from, *inter alia*, the employment of Defendant Vogt in Pennsylvania and, specifically, within the geographic boundaries of the United States District Court for the Eastern District of Pennsylvania, that the claims set forth herein arise.

3.      Defendant Jean McDevitt (previously referred to as McDevitt) is an adult individual who, upon information and belief, resides and is domiciled in the State of New Jersey. Defendant McDevitt is a former employee of Tower Bridge and was assistant to Defendant Vogt during his employment by Tower Bridge and it is from, *inter alia*, the employment of Defendants Vogt and McDevitt in Pennsylvania and, specifically, within the geographic boundaries of the United States District Court for the Eastern District of Pennsylvania, that the claims set forth herein arise.

4.      Defendant Pine Valley Investments Limited Liability Company (previously referred to as Pine Valley) is a limited liability company with unknown members and unknown state of organization, but which maintains, upon information and belief, a place of business located at 10 E. Stow Road, Suite 200, Marlton, New Jersey, 08053.

5.      Defendant Pine Valley is the current employer of Defendants Vogt and McDevitt and it is from, *inter alia*, the prior employment of Vogt and McDevitt by Plaintiff and the subsequent unlawful employment of Vogt and McDevitt by Pine Valley and the conduct of each of the Defendants that has damaged Plaintiff within the geographic boundaries of the United States District Court for the Eastern District of Pennsylvania, that the claims set forth herein arise.

6.      Jurisdiction over this matter is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1332 in that Plaintiff and Defendants are citizens of different states and the amount in controversy is well in excess of $75,000.00 (and continues to grow with each passing day).

7.      Further, the United States District Court for the Eastern District of Pennsylvania has jurisdiction over this matter as the same involves questions of Federal statute.

8.      The Vogt Agreement (as defined herein, *infra*) specifically provides that Defendant Vogt "irrevocably" submitted to the venue and jurisdiction of the United States District Court for the Eastern District of Pennsylvania for any and all suits, actions, or proceedings arising out of the Vogt Agreement (as defined herein, *infra*). Indeed, Defendant Vogt expressly waived any objection to jurisdiction and venue before this Honorable Court. *See* Exhibit 1 (as referenced herein, *infra*), §7.02 (providing that Defendant Vogt consented to, *inter alia*, personal jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania).

### FACTUAL BACKGROUND

9.      Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

10.     Tower Bridge is a Registered Investment Advisor (RIA), registered with the SEC.

11.    Tower Bridge provides investment management services to high net worth individuals, families, and select institutions, managing equity-only and balanced portfolios.

12.    Tower Bridge creates custom portfolios based on the needs of each individual client.

13.    Tower Bridge maintains its client relationships through constant communication and rigorous research.

14.    In performing services on behalf of its clients, Tower Bridge, like most businesses, maintains a secure computer network to be utilized by employees, such as Defendants Vogt and McDevitt, to store Confidential Information (as defined herein, *infra*), trade secrets, and other proprietary business information, strategies, and private client information in a highly protected manner.

15.    To that end, access to Tower Bridge's computer network is protected both by password and dual-factor authentication protection methods.

16.    As detailed herein, *infra*, Tower Bridge puts specific emphasis on the protection of Confidential Information and trade secrets in the conduct of its business, both for its own competitive advantage as well as for the protection and privacy of its many clients.

17.    Tower Bridge maintains a policy that *all* Tower Bridge related materials, including documents accessed (*e.g.*, client information) and prepared (*e.g.*, meeting agenda, status updates, *etc.*), are to be stored on Tower Bridge's network connected storage and *not* on employees' personal devices; the same protects such information and data behind the same password and dual-factor authentication protocols referenced herein, *supra*.

18.    Upon information, belief, and information uncovered since the filing of the first Complaint, despite the clear emphasis placed on the protection of Confidential Information and

trade secrets by Tower Bridge, Defendants Vogt and McDevitt, with the encouragement, aid, enticement, and assistance of Pine Valley, made unlawful usage of Tower Bridge's Confidential Information and trade secrets for the benefit of Defendants.

### *Tower Bridge's Employment of Defendant Vogt*

19.     Tower Bridge first employed Defendant Vogt beginning on January 28, 2016.

20.     Defendant Vogt's employment by Tower Bridge was not initially subject to an employment agreement.

21.     However, with both Defendant Vogt and Tower Bridge recognizing the absence of a written employment agreement between them and wishing to bring clarity to their relationship by memorializing the terms of the same, Defendant Vogt and Tower Bridge entered into and executed an *Employment Agreement* dated December 31, 2018 (the "**Vogt Agreement**"). A true and correct reproduction of the Vogt Agreement is attached hereto as **Exhibit 1**.

22.     The Vogt Agreement expressly provides that the same "constitutes the entire understanding" between Tower Bridge and Defendant Vogt and that the same "supersedes all prior agreements and understandings[.]" *Id.* at §8.04.

23.     Accordingly, the Vogt Agreement represents the sole governing instrument relative to the employment relationship between Tower Bridge and Defendant Vogt and superseded any understandings between Tower Bridge and Defendant Vogt for the time that Defendant Vogt was employed by Tower Bridge prior to the execution of the Agreement.

24.     The terms of the Vogt Agreement were supported by additional consideration, which additional consideration Defendant Vogt expressly acknowledged in executing the Agreement. *Id.* at §4.04.

25.     Indeed, the Vogt Agreement expressly provides: "Employee [(referring to Defendant Vogt)] expressly acknowledges and agrees that this [Vogt] Agreement provides Employee with **new and valuable consideration that Employee was not entitled to receive while Employee was employed by Employer prior to the Effective Date. Such valuable consideration includes, without limitation, an increase in Employee's compensation pursuant to Article III**." *Id.* (emphasis added).

26.     Without the aforementioned representation, Tower Bridge would not have entered into the Vogt Agreement with Defendant Vogt.

27.     The conversion of Defendant Vogt from an at-will employee to an employee with the protection of an employment term represented additional consideration as Defendant Vogt could thereafter only be terminated prior to the expiration of his employment term for cause.

28.     The Vogt Agreement provides that Defendant Vogt was to serve as "Senior Portfolio Manager[,]" that he "report[ed] to the President of" Tower Bridge, and that he was required to perform the following duties for Tower Bridge, without limitation: "(a)regular attendance during Company office hours, (b) prudent management of client accounts, (c) active participation in Company marketing activities, (d) diligent performance of investment research assignments, and (e) performing such reasonable responsibilities as may be prescribed from time-to-time by the Company consistent with duties assigned to a Senior Portfolio Manager or as otherwise agreed upon by the Company and Employee" (collectively, the "**Standard Duties**"*). Id.* at §2.01.

29.     The Vogt Agreement required Defendant Vogt to perform the Standard Duties "and responsibilities in good faith and in a manner which will faithfully and diligently further the business and interests of the Company." *Id.* at §2.03.

30.     The Vogt Agreement specifically forbade Defendant Vogt from working "on either a part-time, full-time or independent contracting basis, for any other business or enterprise" during his employment by Tower Bridge. *Id.*

31.     The Vogt Agreement sets forth several covenants designed to, *inter alia*, protect the Confidential Information of Tower Bridge, including trade secrets and other confidential business information, and to advance the competitiveness of Tower Bridge.

32.     To wit, Section 4.01 of the Vogt Agreement states:

> Confidential Information.     Employee recognizes and acknowledges that, by reason of his employment by and service to the Company, Employee has had and will continue to have access to confidential information of the Company, including, without limitation, information and knowledge pertaining to financial projections, methods of operation, sales and profit figures, customer and client lists, and relationships between the Company and third parties, on the one hand, and customers, clients, suppliers, consultants and others with whom business relationships have been or are contemplated to be established, on the other hand (all of the foregoing collectively, ["]Confidential Information["]). Employee acknowledges that such Confidential Information is a valuable and unique asset of the Company, and Employee covenants that Employee **will not, without prior written authorization of the Company in each case, either during or after the Employment Term, disclose or divulge to any person or entity or use any Confidential Information for any reason whatsoever**, except (a) information that at the time of disclosure by Employee is in the public domain (other than by reason of Employee's breach of the provisions of this section), or (b) as his duties as an employee of the company may otherwise require."

*Id.* at §4.01 (collectively, the "**Confidential Information Covenant**") (emphasis added).

33.     The Vogt Agreement further states:

> Non-Solicitation.     The Employee covenants that from the date hereof and for a period of five (5) years following the expiration, for any reason, of the Employment Term or any extension thereof, Employee shall not, either directly or indirectly, (a) solicit or divert or take away from the Company as a client for a Competing Business, any person or entity that at any time during the Employment Term or any extension thereof was an existing client of the Company; (b) accept or cause to be accepted as a client for a Competing Business any person or entity that at any time during the Employment Term or any extension thereof was an existing or prospective client of the Company; (c) divulge to any competitor or potential competitor of the Company the name of any person who at any time during the

<u>Employment Term was an existing or prospective client of the Company</u>, nor (d) <u>solicit, entice or offer employment to any person who was any employee of the Company during the last year of the Employment Term.</u>

*Id.* at §4.02 (collectively, the "**<u>Non-Solicitation Covenant</u>**")(emphasis added).

34.     Ancillary to Defendant Vogt's execution of the Vogt Agreement, and exceedingly relevant to the compensation and consideration referenced therein, Vogt also became a shareholder of Tower Bridge in connection with his employment thereby.

35.     Indeed, Tower Bridge, as part of the additional compensation promised by the Vogt Agreement, provided to Vogt certain sums of money each year after the execution of the Vogt Agreement up through Vogt's hastened resignation from Tower Bridge for the express purpose of purchasing shares of Tower Bridge.

36.     Attendant to the shares purchased by Vogt, Vogt also executed a shareholder agreement binding him to certain obligations and covenants with Tower Bridge.

37.     Similar to the Vogt Agreement, the Vogt Shareholder Agreement provides that "[e]ach shareholder recognizes and acknowledges that the business plans, products, marketing prospects and customer lists, referral sources and other trade secrets, technology and know-how of the Company as they may exist from time to time (collectively "<u>Confidential Information</u>"), are valuable, special and unique assets of the Company's business, access to and knowledge of which are not made publically available by the Company. No shareholder may, in whole or in part, disclose such Confidential Information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, nor shall he make use of any such Confidential Information for his own purposes (other than decisions as to a shareholder's own investment in the Company) or for the benefit of any person, firm, corporation, association or other entity (except the company) under any circumstances[.]" A true and correct copy of the form of the shareholder agreement

which is substantially identical to the one that would have been signed by Vogt is attached hereto as **<u>Exhibit 2</u>**.[2]

38.     In addition to being a shareholder, beginning in or around 2020, Vogt was also given the title of principal, as well as the role as co-chief investment officer.

39.     Further, as a condition to Defendant Vogt's continued employment by Tower Bridge, Defendant Vogt received and executed an acknowledgment relative to the receipt of a *Tower Bridge Advisors Employee Handbook* (the "**<u>Handbook</u>**"). A true and correct copy of the Handbook is attached hereto as **<u>Exhibit 3</u>**.

40.     Similar to the Vogt Agreement, the Handbook provides, *inter alia*:

Protecting our client's information is the responsibility of every employee and we all share a common interest in making sure it is not improperly or accidentally disclosed. Nonpublic client personal information might be collected on our client profile, brokerage account applications, and other forms, through our business transaction relationship with our client's broker or custodian…[E]mployees should not disclose any nonpublic personal information about our customers or former customers to anyone, except as required by law.

<u>Exhibit 3</u>, p. 4.

41.     The Handbook further provides:

The protection of confidential business information and trade secrets is vital to the interests and success of Tower Bridge. Such confidential information includes, but is not limited to, the following examples:

*Client Information
*Investment Strategy

*Id.* at p. 8.

42.     Still further, the Handbook provides:

Computers, computer files, the e-mail system, and software furnished to employees are Tower Bridge property intended for business use. Employees should not use a password, access a file, or retrieve any stored communication without

---

[2] Tower Bridge is in the process of uncovering the shareholder agreement specifically signed by Vogt (the "Vogt Shareholder Agreement").

authorization. To ensure compliance with this policy computer and e-mail usage will be monitored.

[…]

Abuse of the Internet access provided by Tower Bridge in violation of law or Tower Bridge policies will result in disciplinary action, up to and including termination of employment. Employees may also be held personally liable for any violations of this policy. The following behaviors are examples of previously stated or additional actions and activities that are prohibited and can result in disciplinary action: […] Sending or posting confidential material, trade secrets, or proprietary information outside the organization.

*Id.* at pp. 25-26.

43.     Tower Bridge also maintains and provides to each employee, including Vogt and McDevitt, a Compliance Manual and Code of Ethics, a true and correct copy of which is attached hereto as **Exhibit 4**.

44.     The Code of Ethics, at Section A.3. specifically requires that client information be kept confidential, that the same not be used by any employee of Tower Bridge for their own use and/or gain, and that the same cannot be shared with individuals outside of Tower Bridge. Ex. 4.

### *Tower Bridge's Employment of Defendant McDevitt*

45.     Beginning in on November 19, 2007, Defendant McDevitt was employed by Tower Bridge as an administrative assistant.

46.     Defendant McDevitt received a copy of the same handbook which was provided to Defendant Vogt and signed an acknowledgement thereof in 2007 (the "**McDevitt Acknowledgement**"). A true and correct copy of the McDevitt Acknowledgement is attached hereto as **Exhibit 5**.

47.     During McDevitt's employment by Tower Bridge, she assisted various investment advisors prior to becoming Vogt's administrative assistant.

48.     When Tower Bridge hired Vogt, Defendant McDevitt became Vogt's administrative assistant as the prior financial advisor had retired.

49.     Vogt came to Tower Bridge with no investment clients of his own and, instead, inherited not only McDevitt from the aforementioned retired investment advisor, but also the same advisor's clients' accounts.

50.     During Vogt's employment by Tower Bridge, he generated no new organic clients of his own and the new clients he did receive were those referred to him by other employees of Tower Bridge.

### *Defendants Vogt, McDevitt, and Pine Valley Conspire to Steal Business and Employees from Tower Bridge Using Tower Bridge's Confidential Information and Trade Secrets*

51.     Despite the clear provisions and obligations set forth relative to both Defendant Vogt and Defendant McDevitt relative to their employment by Tower Bridge, as well as obligations which exist under statute and common law (as discussed herein, *infra*), Vogt and McDevitt, in concert with and with encouragement and assistance from Pine Valley, would abuse the trust placed in them by Tower Bridge to their and Pine Valley's benefit and to the direct detriment of Tower Bridge.

52.     Still further, Vogt, in concert with and with encouragement and assistance from Pine Valley, engaged in conduct directly contrary to his duties and obligations to Tower Bridge, both grounded in contract, common-law, and state and Federal statute.

53.     Similarly, McDevitt, with encouragement and assistance from Vogt and Pine Valley engaged in conduct directly contrary to her common-law duty of loyalty to Tower Bridge as her employer.

54.     Indeed, upon information and belief, the managing member of Pine Valley, Harry Morad, was the architect and driving force on behalf of Pine Valley for those matters complained of herein, *infra*, including, without limitation, coordinating efforts to solicit employees from Tower Bridge, tortiously interfering with Tower Bridge's relationships with its clients and employees, *e.g.*, Vogt and McDevitt, inducing Vogt and McDevitt to unlawfully convert and utilize Tower Bridge's Confidential Information and trade secrets, and strategizing as to how Pine Valley, Vogt, and McDevitt could attempt to insulate themselves from liability after their unlawful solicitation of Tower Bridge's clients; all of these actions were taken directly to the benefit of Pine Valley and Harry Morad as Pine Valley's managing member.

55.     Tower Bridge would not become aware of the breadth of the conduct referenced in the foregoing three paragraphs until after Defendants Vogt, McDevitt, and Pine Valley took overt and undisguisable action to effectuate the same.

56.     On or about May 12, 2023, Defendant Vogt caused to be issued to Tower Bridge a *Notice of Resignation* (the "**Pretextual Notice**") wherein Defendant Vogt stated his "notice of […] resignation" from employment by Tower Bridge "effective immediately." A true and correct copy of the Pretextual Notice is attached hereto as **Exhibit 6**.

57.     The Pretextual Notice also, audaciously, communicated that Defendant Vogt had already accepted employment by non-party Pine Valley.

58.     Defendant McDevitt submitted a resignation to Tower Bridge ***the very same day***.

59.     Following the resignation of Defendants Vogt and McDevitt on May 12, 2023, their access to Tower Bridge's network was revoked and their dual-factor authentication devices/tokens were deactivated.

60.    Upon information and belief, despite revocation of their access, certain Confidential Information may remain on the personal devices of Defendants Vogt and McDevitt, *e.g.*, saved contact information, emails, email attachments, *etc.*; as discussed herein, *infra*, Tower Bridge has reason to suspect that Vogt was storing client related documents and memoranda prepared by Vogt and/or McDevitt locally on his personal computer at the time of his resignation, which documents go back at least as far as January, 2023.

61.    Following the revocation their access, a representative of Tower Bridge accessed Defendant McDevitt's Tower Bridge Email Account and, upon logging in, was greeted with a notice indicating that numerous files had been recently deleted and indicating the same were recoverable. A true and correct screenshot of the aforementioned notification is attached hereto as **Exhibit 7**.

62.    Further, following revocation of their access, it was discovered that each of Defendants Vogt and McDevitt had saved personal email addresses in their outlook contacts lists/address books, suggesting the same had been the recipients of emails sent from the outlook emails maintained by Tower Bridge for use by Defendants Vogt and McDevitt in the performance of their employment with Tower Bridge.

63.    However, upon review, it appeared that no such emails from Defendants Vogt and McDevitt from their official Tower Bridge emails to their respective personal emails were saved, suggesting the same had been systematically deleted at some point before their resignation; thus far, the same appear to be beyond recovery by conventional means.

64.    Since May 12, 2023, Tower Bridge has come to learn that Defendant McDevitt had also already accepted employment by Pine Valley at the time of her resignation from Tower

Bridge, receiving a formal offer (after negotiation with Pine Valley by Vogt on her behalf) as early as April 17, 2023.

65.     Still further, since initiation of this Action, Tower Bridge has come to learn of a months' long effort by Vogt and Pine Valley to siphon off business and employees of Tower Bridge, beginning back at least as early as August of 2022. Included among this effort, but certainly not limited to, were Vogt and Pine Valley's direct efforts to entice employees away from Tower Bridge, including McDevitt as well as other investment advisors employed by Tower Bridge.

66.     Relative to Vogt, Tower Bridge has come to learn that Vogt:

a.     Solicited and attempted to lure other financial advisors away from Tower Bridge to accept employment by Pine Valley; Vogt was the introductory force between a number of advisors whom remain at Tower Bridge in an attempt to get them to accept employment by Pine Valley and to bring the clients they serviced on behalf of Tower Bridge with them. Under one employment structure pitched by Pine Valley, Vogt stood to directly benefit from successful conversion of employees of Tower Bridge with a more favorable payout structure from Pine Valley.

b.     Solicited and successfully lured McDevitt away from Tower Bridge to accept employment by Pine Valley; Vogt was both the introductory force between McDevitt and Pine Valley and also negotiated on her behalf with Pine Valley the terms of her employment by Pine Valley. Still further, Vogt specifically negotiated for and promised to McDevitt specific elements of compensation that flow from Vogt directly and directly incentivized McDevitt to unlawfully poach Tower Bridge's clients with promises of percentage driven bonuses.

c.     Actively solicited and successfully lured multiple clients away from Tower Bridge. Upon information and belief, Vogt (and perhaps McDevitt at Vogt's direction) communicated that the shift to a new registered investment advisor, *i.e.*, Pine Valley, was a matter of routine and practice, with Vogt/McDevitt indicating that the decision had been made for the benefit of each individual client and that their accounts could be carried over to Pine Valley automatically with minimal input by the client. Indeed, upon information and belief, Vogt/McDevitt made insinuations to clients that they were clients of Vogt and McDevitt first and clients of Tower Bridge only by happenstance that Vogt and McDevitt were employed by Tower Bridge.

d.     Directed McDevitt to both email a 3,000+ page document to herself and his private email address containing extensive client information and data for clients serviced by Vogt and McDevitt during their employment by Tower Bridge.

e.      Upon information and belief, Vogt also directed McDevitt to utilize a mobile storage device to download information and/or data from Tower Bridge's computer systems and to remove hard copies of client files from Tower Bridge's offices.

f.      Upon information and belief, Vogt also stored client information and data on his personal computer at the time of his resignation.

67.     Curiously, in January of 2023, after Vogt' personal computer purportedly suffered a crash whereby the local storage drive attendant thereto was erased, Tower Bridge learned that Vogt had not been saving client related information and documents on Tower Bridge's secured network as required by Tower Bridge's policies and procedures but, rather, storing the same locally on his personal machine.

68.     As a consequence of the aforementioned crash, this data was purportedly lost.

69.     Tower Bridge reminded Vogt that the same practice violated Tower Bridge's policies and instructed Vogt refrain from storing client information locally. No explanation was ever given by Vogt for why he was storing client data locally, for what purpose the same was stored, or what had caused the computer storage failure.

70.     It is curious that Vogt was covertly storing client data locally, in contravention of Tower Bridge policies and procedures, as of January, 2023 when Tower Bridge has learned that he had been courting a relationship with Pine Valley as early as August 2022 and had been attempting to solicit other employees away from Tower Bridge at that time.

71.     Upon information and belief, Vogt disregarded Tower Bridge's reminder concerning client data and documents and proceeded to continue to store sensitive client data locally on his personal machine beginning sometime in January, 2023.

72.     Further, upon information and belief, at or immediately after the submission of the Pretextual Notice, Defendants Vogt and McDevitt accessed their computer systems and accounts

administered by Tower Bridge and used the same to access and extract/replicate/duplicate Confidential Information and trade secrets of Tower Bridge.

73.     Upon information and belief, both Defendants Vogt and McDevitt had planned their coordinated resignations, as, prior to the their resignations, Vogt and McDevitt made preparations for their departure from Tower Bridge and to prepare for their subsequent employment by Pine Valley by:

a.     making preparations to and actually replicating/duplicating digital files on Tower Bridge's computer systems containing Confidential Information and trade secrets;

b.     transmission and/or removal of digital media copied from Tower Bridge's computer systems containing Confidential Information and trade secrets for usage in their subsequent employment by Pine Valley;

c.     actively contacted existing and prospective clients of Tower Bridge concerning Defendant Vogt's impending departure from Tower Bridge in a brazen attempt to improperly siphon off the same clients for the benefit of Defendants Vogt and McDevitt;

d.     deleting evidence of the aforementioned duplication of digital media files containing Confidential Information and trade secrets to both attempt to obfuscate their improper replication as well as to frustrate Tower Bridge's efforts to provide services to those clients;

e.     removal of physical paper files concerning Tower Bridge's clients from Tower Bridge's offices;

e.     Mass deletion of emails which, upon information and belief, evidence the efforts of Defendants Vogt and McDevitt to duplicate and transmit digital files containing Tower Bridge's Confidential Information and trade secrets to email addresses outside of Tower Bridge's organization and/or to individuals at Pine Valley and/or to personal email addressed owned and controlled by Defendants Vogt and McDevitt;

f.     Actually poaching and engaging clients of Tower Bridge as clients in connection with Vogt/McDevitt's employment by Pine Valley. Tower Bridge itself has been contacted by clients concerning moving their files to Pine Valley subsequent to Defendants' respective resignations.

74.     Upon review of each of Defendant Vogt and Defendant McDevitt's file directories on Tower Bridge's systems, the following shocking disparities were revealed: from February 28th, 2023 through April 11, 2023, Defendant McDevitt had stored on her Tower Bridge storage drive approximately 57,000 files among nearly 3,500 sub-folders. However, on April 23, 2023, fewer than twenty (20) days later, the same drive was found to contain roughly half the number of files, with only approximately 32,500 files existing across just short of 2,700 subfolders.

75.     Tower Bridge is unaware of any reasonable explanation for the mass-deletion of data from Defendant McDevitt's Tower Bridge administered storage, particularly as the same was undertaken mere weeks before the coordinated resignation of Defendants Vogt and McDevitt.

76.     Upon information and belief, the purging of data from Defendant McDevitt's storage was to cover the actions of Defendants Vogt and McDevitt.

77.     Upon information and belief, Defendant Vogt specifically solicited Defendant McDevitt to accept employment by Pine Valley before Defendant Vogt's resignation – a clear violation of Defendant Vogt's Non-solicitation Covenant, Vogt's common-law duty of loyalty to Tower Bridge as his employer, and Vogt's fiduciary duty as a Tower Bridge officer.

78.     Upon information and belief, Defendants Vogt and McDevitt have either disclosed/disbursed the Confidential Information and trade secrets of Tower Bridge throughout Pine Valley's organization or, alternatively, have utilized the same in connection with their employment by Pine Valley.

79.     Shortly after receipt of the Pretextual Notice, Tower Bridge caused to be sent to Defendant Vogt and Pine Valley a letter dated May 16, 2023 (the "**Demand Letter**"), which Demand Letter communicated to Defendant Vogt that Tower Bridge had "learned that you have breached your employment agreement by, among other things, (i) soliciting and diverting clients

of Tower [Bridge] to [b]enefit your new employer, Pine Valley Investments and (ii) soliciting and then hiring Jean McDevitt, your assistant at Tower Bridge." A true and correct copy of the Demand Letter is attached hereto as **Exhibit 8**.

80.    The Demand letter also noted that Tower Bridge had learned that Defendant Vogt (and/or Defendant McDevitt at Defendant Vogt's direction) "accessed and removed from Tower Bridge's computers Confidential Information […] of Tower Bridge, including information related to Tower Bridge's clients [and also] learned that [Defendant Vogt (or Defendant McDevitt at Defendant Vogt's direction)] deleted emails from the Tower Bridge system in an attempt to cover up your unlawful activities." *Id.* at p. 2.

81.    Thereafter, Tower Bridge demanded that Defendant Vogt "identify and return any and all documents and/or electronic records that [Defendant Vogt] took, transmitted, copied or otherwise removed from Tower Bridge, including but not limited to, emails, client files and related information and/or any other documents (whether in paper or electronic form)[…;] and [c]ease and desist from contacting clients of Tower Bridge or soliciting Tower Bridge employees." *Id.*

82.    Tower Bridge provided Defendant Vogt (and by extension, Defendant McDevitt) until 5:00 p.m. on Friday, May 19, 2023 to return any and all Confidential Information and trade secrets which Defendant Vogt took or caused to be taken (through direction of Defendant Vogt to Defendant McDevitt) from Tower Bridge.

83.    Upon information and belief, Defendants Vogt and McDevitt continue to use Tower Bridge's Confidential Information and trade secrets to the detriment of Tower Bridge.

84.    Upon information and belief, the copying/duplication of Confidential Information and trade secrets by Defendants Vogt and McDevitt, followed by the ***immediate*** subsequent employment of each by Pine Valley was and remains part of a deliberate plan and strategy to utilize

Tower Bridge's Confidential Information and trade secrets for the benefit of Defendants Vogt and McDevitt to the detriment of Tower Bridge.

85.     Tower Bridge has come to learn that Vogt and Pine Valley, specifically, discussed requiring clients solicited by Vogt and McDevitt to sign attestations upon moving their accounts to Pine Valley that provided that Vogt/McDevitt had not unlawfully solicited them.

86.     Indeed, Vogt and Pine Valley knew their concert of actions relative to McDevitt, Tower Bridge's clients, and Tower Bridge's Confidential Information and trade secrets was unlawful and would invite litigation.

87.     Upon information and belief, Pine Valley and Vogt included the aforementioned attestation among the documents provided to clients when Vogt and/or McDevitt actively solicited them to move their accounts to Pine Valley.

88.     Upon information and belief, the significance of the aforementioned attestation, to the extent Pine Valley actually required clients to sign the same, was not explained to clients moving their accounts to Pine Valley from Tower Bridge.

89.     Upon information and belief, the actions of Defendants have caused damages to Tower Bridge in excess of $1,500,000.00.

**CLAIMS FOR RELIEF**

90.     Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

91.     The claims for relief, and facts contained herein, *supra*, are set forth insofar as they represent information available to Tower Bridge at the time of this Amended Complaint. Tower Bridge reserves the right to amend these Claims for Relief. To the extent any claim is inconsistent with any other claim, the same is asserted in the alternative.

**COUNT I:**
**Unfair Competition/Raiding**
*(Tower Bridge Advisors, Inc. vs. Pine Valley)*

92.     Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

93.     Courts of the Commonwealth of Pennsylvania have recognized a cause of action for the common law tort of unfair competition where there is evidence of tortious interference with contract and improper inducement of another's employees.

94.     Prior to their resignation from Tower Bridge, and with full knowledge of the Vogt Agreement and the Vogt Shareholder Agreement, Pine Valley directly solicited Vogt and McDevitt to leave their employment with Tower Bridge and to accept employment by Pine Valley.

95.     As part of the aforementioned enticement, upon information and belief, Pine Valley directly or indirectly expressed that the value of each of Defendant Vogt and McDevitt leaving Tower Bridge for Pine Valley was tied to the value of the clients they were servicing on behalf of Tower Bridge and whether the same would leave Tower Bridge for Pine Valley.

96.     Additionally, upon information and belief, Pine Valley expressed to Vogt that there was value to him enticing other investment advisors employed by Tower Bridge to join Pine Valley and even suggested a more generous payment structure would apply to Vogt with Pine Valley if he was successful in soliciting additional employees of Tower Bridge.

97.     The Vogt Agreement is unequivocal – Defendant Vogt expressly agreed that he would not "solicit, entice or offer employment to any person who was any employee of the Company during the last year of the Employment Term." *Ex. 1*, §4.02.

98.     Defendant Vogt soliciting Defendant McDevitt to accept employment by Pine Valley is an unequivocal violation of Defendant Vogt's obligation to refrain from soliciting employees of Tower Bridge.

99.     Further, the same would be a breach of Vogt's fiduciary duties as an officer.

100.    Defendants Vogt and McDevitt sought to and successfully converted many clients they serviced while employed by Tower Bridge using Tower Bridge's Confidential Information and trade secrets and, anticipating the same would invite litigation, had the same sign, upon information and belief, attestations of non-solicitation in an attempt to shield themselves and Pine Valley from liability.

101.    Accordingly, based upon the actions taken by Pine Valley in enticing Vogt away from Tower Bridge with promises of increased compensation based on his ability to convert both clients and employees of Tower Bridge to become clients and employees of Pine Valley, as well as Pine Valley's encouragement of Vogt's successful raiding of Tower Bridge to solicit McDevitt to join Pine Valley as an employee, Tower Bridge has been damaged and will continue to suffer further immediate and irreparable harm and injury stemming from Vogt and McDevitt's usage of Tower Bridge's Confidential Information and trade secrets.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant Pine Valley Investments LLC on this Count I and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

### COUNT II:
#### Unfair Competition/Raiding
*(Tower Bridge Advisors, Inc. vs. Vogt and McDevitt)*

102.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

103.    Prior to their resignation from Tower Bridge, Vogt solicited McDevitt to leave her employment by Tower Bridge (including by negotiating on her behalf with Pine Valley) and to assist Defendant Vogt in his efforts of replicating and transmitting Tower Bridge's Confidential Information and trade secrets for use by Defendants Vogt and McDevitt in connection with their subsequent employment by Pine Valley.

104.    The Vogt Agreement is unequivocal – Defendant Vogt expressly agreed that he would not "solicit, entice or offer employment to any person who was any employee of the Company during the last year of the Employment Term." *Ex. 1*, §4.02.

105.    Defendant Vogt soliciting Defendant McDevitt to accept employment by Pine Valley is an unequivocal violation of Defendant Vogt's obligation to refrain from soliciting employees of Tower Bridge, as well as his duty of loyalty and fiduciary duties.

106.    Defendants Vogt and McDevitt sought to and successfully converted many clients they serviced while employed by Tower Bridge and, anticipating the same would invite litigation, had the same sign attestations of non-solicitation in an attempt to shield themselves (and Pine Valley) from liability.

107.    Accordingly, based upon the actions taken by Vogt to solicit McDevitt to join Pine Valley as an employee, Tower Bridge has been damaged and will continue to suffer further

immediate and irreparable harm and injury stemming from Vogt and McDevitt's usage of Tower Bridge's Confidential Information and trade secrets.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant(s), James Vogt and/or Jean McDevitt, as applicable, on this Count II and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

<u>**COUNT III:**</u>
<u>**Breach of Contract**</u>
(*Tower Bridge Advisors, Inc. vs. Vogt*)

108.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

109.    By taking, failing to return, and using and/or disclosing Tower Bridge's Confidential Information and/or trade secrets, Defendant Vogt has breached the Vogt Agreement with Tower Bridge and, specifically, the Confidential Information Covenant thereof.

110.    By soliciting Defendant McDevitt away from Tower Bridge, Defendant Vogt has breached the Vogt Agreement with Tower Bridge and, specifically the Non-solicitation Covenant thereof.

111.    Furthermore, by taking, failing to return, directing McDevitt to make copies of, and using and/or disclosing Tower Bridge's Confidential Information and/or trade secrets, Defendant

Vogt has breached the Vogt Shareholders Agreement with Tower Bridge and, specifically, the provisions contained therein concerning the protection of confidential information.

112.   By attempting to solicit Tower Bridge's clients through usage of Tower Bridge's Confidential Information and trade secrets, Defendant Vogt has breached the Vogt Agreement with Tower Bridge and, specifically, the Non-solicitation Covenant thereof.

113.   By using Tower Bridge's Confidential Information to solicit clients away from Tower Bridge, Defendant Vogt has breached the Vogt Shareholders Agreement and, particularly, the provisions contained therein concerning the usage of Confidential Information.

114.   So long as Defendant Vogt continues to possess, maintain, and utilize the Confidential Information and trade secrets of Tower Bridge for his own benefit, Tower Bridge will continue to suffer immediate and irreparable harm and damage.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against James T. Vogt on this Count III and seeks relief as follows:

(A)   permanent injunctive relief;

(B)   costs of suit and attorneys' fees;

(C)   compensatory damages;

(D)   punitive damages; and

(E)   pre-judgment and post-judgment interest.

## COUNT IV:
### Breach of Duty of Loyalty of an Employee to an Employer and Diversion of Corporate Opportunities
*(Tower Bridge Advisors, Inc. vs. Vogt and McDevitt)*

115.   Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

116.   Both Defendants Vogt and McDevitt were employees of Tower Bridge and, as a consequence thereof, owed a duty of loyalty to Tower Bridge.

117.   As part of the aforementioned duty, Defendants Vogt and McDevitt owed a duty to Tower Bridge to not misappropriate or exceed their authorized use of and/or access to Tower Bridge's Confidential Information and trade secrets, to not directly compete with Tower Bridge, or otherwise to not engage in conduct directly damaging to Tower Bridge.

118.   Further, Defendant Vogt owed a duty to Tower Bridge to not wrongfully solicit employees of Tower Bridge, including Defendant McDevitt, to accept employment by Pine Valley while still employed by Tower Bridge.

119.   Tower Bridge is also aware that Defendant Vogt also unsuccessfully attempted to solicit away at least two financial investment advisors from Tower Bridge to join him at Pine Valley; indeed, during the eight month process during which Vogt was planning his move to Pine Valley, Pine Valley made offers of compensation structure that were more generous than the structure which Vogt ultimately accepted *because they were specifically based upon other financial advisors following Vogt to Pine Valley*.

120.   Upon information and belief, Defendants Vogt and McDevitt have utilized Tower Bridge's Confidential Information and trade secrets for their own benefit.

121.   Both Defendants Vogt and McDevitt misappropriated, used and/or will continue to use and/or disclose in the future confidential and propriety information belonging to Tower Bridge in breach of their common law duty of loyalty to Tower Bridge.

122.   The aforementioned use and disclosure of Confidential Information and trade secrets by Defendants Vogt and McDevitt has and will continue to cause immediate and irreparable harm and damage to Tower Bridge.

123.     While still employed by Tower Bridge, Defendants Vogt and McDevitt actively prepared to transition to Pine Valley immediately upon their resignation by collecting Confidential Information and trade secrets over at least a five month period, culminating with Defendant McDevitt utilizing a personal storage device to, upon information and belief, download information from Tower Bridge's systems as well as sending an email with a 3,000+ page PDF attachment containing Tower Bridge's client information.

124.     Furthermore, it has become clear that Vogt had to have had Tower Bridge Confidential Information and trade secrets stored on his personal computer, both before his purported computer failure in January of 2023 and thereafter as he failed to follow Tower Bridge policies and directives requiring the storage of the same only on Tower Bridge's networked storage.

125.     Still further, Tower Bridge believes that the lack of hard paper files concerning clients served by McDevitt and Vogt during their employment by Tower Bridge is no accident; following McDevitt and Vogt's departure, it was discovered that while there were files in their respective spaces at Tower Bridge's offices labeled with client names, the same *files were empty*.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant(s), James Vogt and/or Jean McDevitt, as applicable, on this Count IV and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

## COUNT V:
### Breach of Fiduciary Duty of an Officer
*(Tower Bridge Advisors, Inc. vs. Vogt)*

126.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

127.    At all times relevant to the matters complained of herein, Vogt was the Co-Chief Investment Officer of Tower Bridge (as reflected on Tower Bridge's SEC filing of March 24, 2023), as well as a principal

128.    As an officer (and principal) of Tower Bridge, Vogt owed to Tower Bridge to act in the best interest of Tower Bridge and to not engage in conduct that would harm Tower Bridge or constitute self-dealing or in his own self-interest.

129.    Vogt's actions, including but not limited to, (1) the attempted solicitation of financial advisors from Tower Bridge, (2) the successful solicitation of McDevitt from Tower Bridge, (3) the misappropriation and conversion of Confidential Information and trade secrets from Tower Bridge, (4) the directing of McDevitt to convert Confidential Information and trade secrets from Tower Bridge, (5) the attempted and successful solicitation of clients of Tower Bridge using Confidential Information and trade secrets, and (6) the directing of McDevitt to solicit clients of Tower Bridge, all constitute breaches of Vogt's fiduciary duty to Tower Bridge.

130.    As set forth herein, *supra*, Tower Bridge has suffered extensive damages as a consequence of Vogt's actions.

WHEREFORE, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant James T. Vogt on this Count V and seeks relief as follows:

(A)    permanent injunctive relief;

(B)    costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

## COUNT VI:
### Aiding and Abetting Breach of Fiduciary Duty
(*Tower Bridge Advisors, Inc. vs. Pine Valley*)

131.     Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

132.     As set forth herein, *supra*, Defendant Vogt clearly violated his fiduciary duty of loyalty to Tower Bridge as an employee of Tower Bridge.

133.     Furthermore, Defendant Vogt breached his fiduciary duty as an officer and principal of Tower Bridge.

134.     Pine Valley directly aided and abetted Defendant Vogt's breach of fiduciary duty of loyalty to Tower Bridge as well as his fiduciary duty as an officer of Tower Bridge.

135.     Defendant Vogt: (1) absconded with Confidential Information and trade secrets (both through his own actions and the actions of McDevitt which he directed); (2) attempted to solicit other employees of Tower Bridge to follow to him to Pine Valley in exchange for increased compensation for himself from Pine Valley; (3) successfully solicited McDevitt to join him at Pine Valley and negotiated on her behalf with Pine Valley as to her compensation; and (4) successfully used Tower Bridge's Confidential Information and trade secrets to actively solicit clients away from Tower Bridge for his, McDevitt's and Pine Valley's benefit.

136.     Pine Valley was aware of Vogt's actions and directly incentivized them, offering more generous payout structures based upon Vogt's (unsuccessful) efforts to convert Tower Bridge advisors.

137.    Furthermore, Pine Valley was aware of Vogt's actions as it directly engaged in communications with Vogt in anticipation of the risk of ***this very litigation***; indeed, Pine Valley made promises to cover certain legal expenses of Vogt and McDevitt and discussed with Vogt the inclusion of an attestation of non-solicitation in order to shield Pine Valley from liability for unlawful solicitation of Tower Bridge clients.

138.    Accordingly, Tower Bridge has been damaged by Pine Valley's aiding and abetting Vogt's breach of his fiduciary duty of loyalty.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Pine Valley Investments on this Count VI and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.


### COUNT VII:
### Aiding and Abetting Breach of Fiduciary Duty
*(Tower Bridge Advisors, Inc. vs. Pine Valley)*

139.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

140.    As set forth herein, *supra*, Defendant McDevitt clearly violated her fiduciary duty of loyalty to Tower Bridge as an employee of Tower Bridge.

141.    Pine Valley directly aided and abetted Defendant McDevitt's breach of her fiduciary duty of loyalty to Tower Bridge.

142.     Defendant McDevitt: (1) absconded with Confidential Information and trade secrets; (2) successfully used Tower Bridge's Confidential Information and trade secrets to actively solicit clients away from Tower Bridge for her, Vogt's and Pine Valley's benefit.

143.     Furthermore, McDevitt attended training session(s) with Pine Valley while still employed by Tower Bridge.

144.     Pine Valley was well aware that McDevitt was an employee of Tower Bridge and so owed a duty of loyalty to Tower Bridge.

145.     Pine Valley directly incentivized the conduct of McDevitt in breaching her duty of loyalty to Tower Bridge, including by actively negotiating with Vogt relative to her compensation structure with Pine Valley, *which compensation structure would ultimately include a promised percentage of net revenue received relative to clients converted by Vogt and McDevitt from Tower Bridge*.

WHEREFORE, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant Pine Valley Investments LLC on this Count VII and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

## COUNT VIII:
## Aiding and Abetting Breach of Fiduciary Duty
*(Tower Bridge Advisors, Inc. vs. Vogt)*

146.     Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

147.     As set forth herein, *supra*, Defendant McDevitt clearly violated her fiduciary duty of loyalty to Tower Bridge as an employee of Tower Bridge.

148.     Vogt directly aided and abetted Defendant McDevitt's breach of her fiduciary duty of loyalty to Tower Bridge.

149.     Vogt was obviously aware of Defendant McDevitt's employment by Tower Bridge and so her duty of loyalty to Tower Bridge as well.

150.     Vogt directly enticed Defendant McDevitt to breach her duty of loyalty to Tower Bridge by actively negotiating on her behalf with Pine Valley relative to her compensation prior to their resignation from Tower Bridge.

151.     Furthermore, Vogt directly incentivized Defendant McDevitt to solicit and convert Tower Bridge clients to Pine Valley clients by promising a percentage of net revenue received relative to those clients as a bonus to McDevitt.

152.     Accordingly, Tower Bridge has and will continue to be damaged by Vogt's aiding and abetting McDevitt's breach of fiduciary duty.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against James T. Vogt on this Count VIII and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

<u>**COUNT IX:**</u>
**<u>Violations of the Economic Espionage Act,</u>**
**<u>as Amended by the Defend Trade Secrets Act, 18 U.S.C. §1831</u>**
(*Tower Bridge Advisors, Inc. vs. All Defendants*)

153.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

154.    Pursuant to the Vogt Agreement, Defendant Vogt was prohibited from any action where by the Confidential Information or trade secrets of Tower Bridge were "…disclose[d] or divulge[d] to any person or entity or use any Confidential Information for any reason whatsoever, except (a) information that at the time of disclosure by Employee is in the public domain (other than by reason of Employee's breach of the provisions of this section), or (b) as his duties as an employee of the company may otherwise require."

155.    Similarly, the Vogt Shareholders Agreement prohibited Vogt's usage of Tower Bridge's Confidential Information for any purpose other than that of Tower Bridge.

156.    During Defendant Vogt's employment by Tower Bridge, and without express or implied authorization from Tower Bridge, Defendant Vogt transferred or caused Defendant McDevitt to transfer Tower Bridge's Confidential and trade secrets.

157.    Such transfer of the aforementioned information was for the purpose of enriching Defendants.

158.    Indeed, Pine Valley was presumably counting on Defendants Vogt and McDevitt to bring Confidential Information and trade secrets with them to enable them to solicit and convert Tower Bridge clients for Defendants' collective benefit.

159.    Tower Bridge's Confidential Information and trade secrets are not commonly known by or available to the public and are used in interstate commerce.

160.    Tower Bridge's Confidential Information and trade secrets have independent economic value in that they were acquired, created, and compiled at significant cost to Tower Bridge.

161.    The information that Defendants have misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by the Defend Trade Secrets Act, 18 U.S.C. §1831, *et seq.*

162.    Defendants' misappropriation of Tower Bridge's Confidential Information and trade secrets was willful and malicious.

163.    As a direct consequence of Defendants' actions, Tower Bridge has suffered damages for actual loss to be proven at trial, as well as attorneys' fees and costs, and will continue to be irreparably harmed and damaged.

164.    Defendants knew or had reason to know that Tower Bridge's Confidential Information constituted trade secrets and the provision of the same to Pine Valley and usage by Defendants Vogt and McDevitt was improper.

165.    Indeed, Defendants specifically contemplated prophylactic measures to avoid litigation, discussing having clients unlawfully poached from Tower Bridge sign attestations that they had not been solicited by Defendants Vogt and/or McDevitt.

166.    Further, Tower Bridge is entitled to injunctive relief, enjoining Defendants from further accessing, using or disclosing Tower Bridge's Confidential Information and Trade Secrets from soliciting further employees and from contacting, soliciting or otherwise providing services to any clients of Tower Bridge identified in Tower Bridge's Confidential Information and/or trade secrets.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants on this Count IX and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

**COUNT X:**
**<u>Violation of the Pennsylvania Uniform Trade Secrets Act</u>**
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

167.     Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

168.     While still employed by Tower Bridge, Defendants Vogt and/or McDevitt caused to be replicated and/or removed from Tower Bridge's servers and/or offices, documents containing Tower Bridge's Confidential Information and/or trade secrets.

169.     Tower Bridge considers the aforementioned documents and information to be trade secrets and/or Confidential Information as defined in the Vogt Agreement (and Handbook and Vogt Shareholders Agreement) in that the information is not generally known to or ascertainable by the general public and was provided to Defendants Vogt and McDevitt in confidence as a function of their employment by Tower Bridge.

170.     Additionally, the information referred to in the preceding paragraph derives independent economic value in that Tower Bridge has spent significant resources creating and/or maintaining this information.

171.    Further, Tower Bridge has undertaken significant and exceedingly reasonable efforts to maintain the secrecy of this information by, *inter alia*, maintaining written handbooks and policies concerning usage and access to Confidential Information, trade secrets, and company owned networks, requiring employees to execute agreements acknowledging the protection of such information, *i.e.*, the Vogt Agreement, maintaining paper files in secure offices, and maintaining access to digital copies of Confidential Information and trade secrets behind password and dual-factor authentication protection methods.

172.    By engaging in the conduct described herein, Defendants Vogt and McDevitt unlawfully misappropriated Tower Bridge's Confidential Information and trade secrets for the benefit of Defendants.

173.    Indeed, Pine Valley was presumably counting on Defendants Vogt and McDevitt to bring Confidential Information and trade secrets with them to enable them to solicit and convert Tower Bridge clients for Defendants' collective benefit.

174.    Defendants knew or had reason to know that Tower Bridge's Confidential Information constituted trade secrets and the provision of the same to Pine Valley and usage by Defendants Vogt and McDevitt was improper.

175.    Indeed, Defendants specifically contemplated prophylactic measures to avoid litigation, discussing having clients unlawfully poached from Tower Bridge sign attestations that they had not been solicited by Defendants Vogt and/or McDevitt.

176.    As a result, Tower Bridge has and will continue to suffer irreparable harm and damages.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants on this Count X and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

## COUNT XI:
### Misappropriation/Conversion of Confidential Information
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

177.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

178.    The files, records, and documents of Tower Bridge, including those documents containing Confidential Information and trade secrets of Tower Bridge, are highly confidential and treated and protected as such by Tower Bridge.

179.    Tower Bridge specifically limits access to digital documents containing confidential and propriety information through multiple methods.

180.    Tower Bridge's Confidential Information derives independent economic value and provides economic advantage to Tower Bridge in that the same would be valuable to a competitor of Tower Bridge, such as Pine Valley, as well as employees of Pine Valley, such as Defendants Vogt and McDevitt.

181.    As set forth herein, *supra*, Tower Bridge has implemented multiple measures to protect its Confidential Information and trade secrets.

182.    Tower Bridge expends significant time and resources in developing and protecting its Confidential Information and trade secrets.

183.    Tower Bridge's Confidential Information and trade secrets are unknown outside of its business and difficult for others to acquire and/or duplicate (without usage of improper acts, such as those by Defendants Vogt and McDevitt).

184.    Tower Bridge entrusted both Defendants Vogt and McDevitt with access to its Confidential Information and Trade Secrets.

185.    Defendants Vogt and McDevitt abused such access, providing the same to Pine Valley and utilizing the same for their own benefit, the benefit of Pine Valley, and the detriment of Tower Bridge.

186.    As a result, Tower Bridge has suffered and will continue to suffer immediate and irreparable harm and damages.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants on this Count XI and seeks relief as follows:

(A)    permanent injunctive relief;

(B)    costs of suit and attorneys' fees;

(C)    compensatory damages;

(D)    punitive damages; and

(E)    pre-judgment and post-judgment interest.

<u>**COUNT XII:**</u>
<u>**Tortious Interference with Contract (Vogt)**</u>
*(Tower Bridge Advisors, Inc. vs. Pine Valley)*

187.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

188.    Defendant Vogt has valid contracts in both the Vogt Agreement and the Vogt Shareholders Agreement with Tower Bridge which prohibits Defendant Vogt from using or

disclosing Confidential Information as well as prohibiting Defendant Vogt from soliciting Tower Bridge's employees and clients.

189.    There is a reasonable likelihood that Defendants' intentional interference has caused loss of the protections of the contract and of prospective economic gain through the loss of protection of Tower Bridge's confidential information and the subsequent loss of the economic gains associated with the same, such as customer goodwill and product development.

190.    As a result of Defendants' conduct, Tower Bridge has suffered and will continue to suffer irreparable harm and damages including but not limited to loss of goodwill and business.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant Pine Valley Investments on this Count XII and seeks relief as follows:

(A)    permanent injunctive relief;

(B)    costs of suit and attorneys' fees;

(C)    compensatory damages;

(D)    punitive damages; and

(E)    pre-judgment and post-judgment interest.

## COUNT XIII:
### Tortious Inference with Business Relationships (McDevitt)
*(Tower Bridge Advisors, Inc. vs. Vogt and Pine Valley)*

191.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

192.    Tower Bridge has a business relationship with its employees and reasonable expectation of economic advantage in relation thereto.

193.    Defendants had actual or construct knowledge and notice of the business relationships that Tower Bridge maintains with its employees, including Defendants Vogt and McDevitt.

194.    Defendant Vogt specifically attempted to solicit additional financial advisors away from Tower Bridge to join him at Pine Valley.

195.    Furthermore, Vogt directly interfered with the business relationship between Tower Bridge and McDevitt by soliciting her on behalf of Pine Valley, offering incentive based bonus compensation based on clients converted, and actually employing her at Pine Valley.

196.    Defendants have taken unlawful, unjustified and malicious actions to interfere with and destabilize Tower Bridge's relationships with employees, resulting in immediate harm and irreparable damage to Tower Bridge.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants James T. Vogt and Pine Valley Investments LLC, as applicable, on this Count XIII and seeks relief as follows:

(A)    permanent injunctive relief;

(B)    costs of suit and attorneys' fees;

(C)    compensatory damages;

(D)    punitive damages; and

(E)    pre-judgment and post-judgment interest.

## COUNT XIV:
## Tortious Inference with Business Relationships (Tower Bridge Clients)
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

197.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

198.    Tower Bridge enjoyed fruitful business relationships with myriad clients that were serviced by Vogt and McDevitt during their employments by Tower Bridge.

199.    The actions taken by Vogt, McDevitt, and Pine Valley relative to the unlawful solicitation (using Confidential Information and trade secrets) of Tower Bridge clients, including, upon information and belief, having the same clients sign attestations that Vogt and McDevitt did not in fact solicit them from Tower Bridge, directly interfered with the aforementioned business relationships enjoyed by Tower Bridge.

200.    While a party is surely entitled to select their financial advisor, Defendants cannot unlawfully solicit clients they inherited while working at Tower Bridge with potentially misleading communications and seeking to rely upon the same clients to sign false attestations of non-solicitation to protect themselves from liability.

WHEREFORE, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants as applicable, on this Count XIV and seeks relief as follows:

(A)    permanent injunctive relief;

(B)    costs of suit and attorneys' fees;

(C)    compensatory damages;

(D)    punitive damages; and

(E)    pre-judgment and post-judgment interest.

## COUNT XV:
### Civil Conspiracy
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

201.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

202.    Prior to when Defendant Vogt's employment by Tower Bridge terminated, Defendants Vogt, McDevitt, and Pine Valley conspired to siphon off key assets of Tower Bridge– including Tower Bridge's trade secrets, Confidential Information, and employees – for the benefit of Defendants.

203.    Such actions were taken with malice and for the specific purpose of crippling Tower Bridge's ability to service certain clients and utilize its own trade secrets and Confidential Information while simultaneously enriching Defendants through usage of the same.

204.    Defendants committed numerous overt acts including, *inter alia*, the unauthorized copying and forwarding and/or removal of Confidential Information and trade secrets of Tower Bridge (including possibly to their personal Gmail accounts), sudden and coordinated resignation from Tower Bridge and subsequent and immediate employment by Pine Valley, removal of paper files containing Tower Bridge's Confidential Information and trade secrets, Defendant Vogt's targeted solicitation of Defendant McDevitt, and the coordinated effort using Tower Bridge's Confidential Information and trade secrets to solicit clients away from Tower Bridge for the benefit of Defendants Vogt and McDevitt.

205.    Defendants discussed the execution of non-solicitation attestations to be signed by clients converted by Vogt and McDevitt as cover for the inevitable liability that would attach to their unlawful solicitation.

206.    The aforementioned actions were taken, upon information and belief, to the knowledge of Pine Valley and at the encouragement of Pine Valley based upon promises of enriched employment by Pine Valley.

207.    Indeed, Pine Valley specifically incentivized (and counted on) Vogt and McDevitt to convert both clients of Tower Bridge as well as financial advisors.

208.    Unless Defendants are restrained from further using and abusing their unlawful access to Tower Bridge's Confidential Information and trade secrets, Tower Bridge will continue to suffer immediate and irreparable harm and damage.

209.    Upon information and belief, the calculated actions taken by Defendants were not only designed to benefit Defendants, but to also prevent clients from rejoining Tower Bridge.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants on this Count XV and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

## COUNT XVI:
### Concert of Action
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

210.    Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

211.    As set forth herein above, all Defendants arguably engaged in one form of tortious conduct or another and received substantial assistance from other Defendants in engaging in the same.

212.    As to Vogt:

> Tortious Conduct: (1) attempted solicitation of financial advisors from Tower Bridge; (2) successful unlawful solicitation of McDevitt from Tower Bridge to Pine Valley; (3) attempted and successful conversion and misappropriation of Confidential Information and trade secrets in violation of state and Federal statutes, as well as common law; (4) attempted and

successful conversion of Tower Bridge clients for the benefit of all Defendants.

Assistance/Enticement Received:

> Pine Valley: (1) legal assistance (including funds to pay for legal expenses); (2) incentivize the conversion of McDevitt as an employee and Tower Bridge clients; (3) incentivized attempts to convert Tower Bridge financial advisors with promises of increased compensation; and (4) actively strategized with Vogt across eight months relative to his exit from Tower Bridge.

> McDevitt: (1) converted, copied, and misappropriated mass amounts of Confidential Information and trade secrets at the direction of Vogt; and (2) actively contacted and solicited clients of Tower Bridge for the benefit of herself, Vogt, and Pine Valley.

213. As to McDevitt:

> Tortious Conduct: (1) attempted and successful conversion and misappropriation of Confidential Information and trade secrets in violation of state and Federal statutes, as well as common law; and (2) attempted and successful conversion of Tower Bridge clients for the benefit of all Defendants.

Assistance/Enticement Received:

> Vogt: (1) negotiated on her behalf with Pine Valley for compensation upon her employment by Pine Valley, which negotiations included considerations for clients converted from Tower Bridge; (2) directing McDevitt to make preparations for their departure from Tower Bridge, including the mass copying and transmittal of Confidential Information and trade secrets; (3) acting as the communication liaison between McDevitt and Pine Valley (at least initially); and (4) incentivized McDevitt to convert clients of Tower Bridge in exchange for a percentage based bonus.

> Pine Valley: (1) legal assistance (including funds to pay for legal expenses); (2) incentivized attempts to convert Tower Bridge financial advisors with promises of increased compensation, and (3) provided training to McDevitt prior to her actual resignation from Tower Bridge.

214. Accordingly, Tower Bridge has been damaged by the concert of action engaged in by Defendants and, so, is entitled to damages.

**WHEREFORE**, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendants on this Count XVI and seeks relief as follows:

(A)     permanent injunctive relief;

(B)     costs of suit and attorneys' fees;

(C)     compensatory damages;

(D)     punitive damages; and

(E)     pre-judgment and post-judgment interest.

**COUNT XVII:**
**Intentionally Accessing a Protected Computer in Violation of 18 U.S.C. §1030(g) /**
**Conspiracy to Intentionally Access a Protected Computer**
*(Tower Bridge Advisors, Inc. vs. Vogt and McDevitt)*

215.     Tower Bridge incorporates each of the foregoing paragraphs as if each were set forth at length herein.

216.     Tower Bridge's computer systems and networks are computer systems used in interstate and/or foreign commerce, and thus are protected computers, as such term is defined in 18 U.S.C. § 1030(e)(2)(B).

217.     Both during their employment, and following their resignation, Defendants Vogt and McDevitt intentionally accessed a computer without authorization and/or exceeded their authorized access to and thereby obtained information from a protected computer; to wit, Defendants Vogt and McDevitt obtained Confidential Information and trade secrets from Tower Bridge's computer systems in violation of 18 U.S.C. § 1030(a)(2).

218.     In addition, Defendants Vogt and/or McDevitt knowingly and with intent to defraud Tower Bridge, accessed a protected computer without authorization, and/or exceeded her authorized access, and by means of such conduct furthered the intended fraud and obtained

substantial items of value (*i.e.*, Tower Bridge's Confidential Information and trade secrets) in violation of 18 U.S.C. § 1030(a)(4).

219.    Pursuant to 18 U.S.C. § 1030(g) any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief.

WHEREFORE, Plaintiff, Tower Bridge Advisors, Inc. respectfully requests judgment in its favor and against Defendant(s), James Vogt and/or Jean McDevitt, as applicable, on this Count XVII and seeks relief as follows:

(A)    permanent injunctive relief;

(B)    costs of suit and attorneys' fees;

(C)    compensatory damages;

(D)    punitive damages; and

(E)    pre-judgment and post-judgment interest.

*Respectfully submitted,*

**SILVERANG, ROSENZWEIG & HALTZMAN, LLC**

By: /s/ Mark S. Haltzman
    Mark S. Haltzman, Esquire
    Kevin D. McGowan, Jr., Esquire
    PA Atty ID Nos.  38957 / 324196
    900 E. 8th Avenue, Suite 300
    King of Prussia, PA 19406
    *Attorneys for Tower Bridge*