UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

TOWER BRIDGE ADVISORS, INC.,

                *Plaintiff,*

    v.

JAMES T. VOGT, JEAN MCDEVITT, and PINE
VALLEY INVESTMENTS, LLC,

                *Defendants,*

_____

JAMES T. VOGT and JEAN McDEVITT,

                *Counter-Claimants /*
                *Third-Party Plaintiffs,*

    v.

TOWER BRIDGE ADVISORS, INC.,

                *Counter-Defendant,*

and

MARIS A. OGG, and JAMES M. MEYER,

                *Third-Party Defendants.*

CIVIL ACTION

CASE NO.: 2:23-cv-02007-GEKP

JURY TRIAL DEMANDED

---

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY
COMPLAINT OF DEFENDANTS JAMES T. VOGT AND JEAN MCDEVITT**

---

      Defendants James T. Vogt ("Vogt") and Jean McDevitt ("McDevitt" or, collectively with

Vogt, "Defendants" or the "Answering Defendants"), by way of Answer to the First Amended

Complaint (Docket No. 23) filed on August 8, 2023 by Plaintiff Tower Bridge Advisors, Inc.

("TBA" or "Plaintiff"), hereby answer, respond, and state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted that Defendant Pine Valley Investments, LLC ("Pine Valley") is a

limited liability company which maintains an office located at 10 E. Stow Road, Suite 200,

Marlton, New Jersey 08053.  Beyond that, the Answering Defendants are without knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations set forth in

Paragraph 4 of the Complaint, and Plaintiff is left to its proofs.

5.      Admitted that Vogt and McDevitt are employed by Pine Valley as of the filing of

this pleading and has been the Answering Defendants' employer since on or about May 15,

2023.  Admitted that Vogt and McDevitt were previously employed by Plaintiff.  The remaining

allegations set forth in Paragraph 5 of the Complaint are denied.

6.      The allegations set forth in Paragraph 6 of the Complaint call for a legal

conclusion to which no response is required.  To the extent the allegations require a response, the

allegations are denied.

7.      The allegations set forth in Paragraph 7 of the Complaint call for a legal

conclusion to which no response is required.  To the extent the allegations require a response, the

allegations are denied.

10017283v1

8.      The allegations set forth in Paragraph 8 of the Complaint call for a legal conclusion to which no response is required.  To the extent the allegations require a response, the allegations are denied.

## FACTUAL BACKGROUND

9.      The Answering Defendants repeat, reallege and incorporate by reference each and every answer contained in the preceding paragraphs of this Answer as if fully set forth herein.

10.     Admitted.

11.     Admitted that Plaintiff, through its employees, provides investment management and advisory services to its clients.  The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 11 of the Complaint, and Plaintiff is left to its proofs.

12.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 12 of the Complaint, and Plaintiff is left to its proofs.

13.     The allegations set forth in Paragraph 13 of the Complaint are denied.

14.     The allegations set forth in Paragraph 14 of the Complaint are denied.

15.     The allegations set forth in Paragraph 15 of the Complaint are denied.

16.     The allegations set forth in Paragraph 16 of the Complaint are denied.

17.     The allegations set forth in Paragraph 17 of the Complaint are denied.

18.     The allegations set forth in Paragraph 18 of the Complaint are denied.

19.     Admitted that Vogt commenced his employment with TBA on or around January 28, 2016.

20.     Admitted.

21.     Admitted that Vogt and TBA entered into a written Employment Agreement dated December 31, 2018.  Admitted that Vogt understood that he was required to sign the Employment Agreement with TBA to continue his employment with TBA.  In other words, TBA would have terminated Vogt's employment with the company if Vogt refused to sign the Employment Agreement.  Admitted that Vogt cooperated with management in the negotiation and execution of the Employment Agreement for fear of losing his job.  Admitted that the principal owners of TBA were exploring the possible sale of TBA and that was the primary driver behind requiring portfolio managers and other employees of TBA to sign employment agreements with the firm.  The allegations set forth in Paragraph 21 of the Complaint are otherwise denied.

22.     The allegations set forth in Paragraph 22 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

23.     The allegations set forth in Paragraph 23 of the Complaint call for a legal conclusion to which no response is required.  To the extent the allegations require a response, the allegations are denied.

24.     The allegations set forth in Paragraph 24 of the Complaint are denied.  There was no valid legal consideration of the Employment Agreement between Vogt and TBA.

25.     The allegations set forth in Paragraph 25 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.  Furthermore, Plaintiff's allegation that Vogt received an increase in his compensation as additional consideration for the Employment Agreement is specifically denied, as Vogt did not receive any additional pay or "an increase in [his] compensation" in connection with or as consideration for the Employment Agreement.

26.     The allegations set forth in Paragraph 26 of the Complaint are denied.

27.     The allegations set forth in Paragraph 27 of the Complaint are denied.  Under the Employment Agreement, TBA could terminate Vogt's employment at any time in its sole and absolute discretion for many reasons, including certain delineated reasons, "without limitation." Furthermore, under Section 5.01 of the Employment Agreement, Vogt's employment was to be terminated upon the expiration of its three-year term but did not.  Instead, Vogt's employment continued until he resigned from his employment with TBA on or about May 12, 2023.  In essence, nothing changed in Vogt's employment with TBA when he signed the Employment Agreement, and in reality he was an at-will employee of TBA at all times.

28.     Admitted that Vogt was employed by TBA as a "Senior Portfolio Manager." Beyond that, the allegations set forth in Paragraph 28 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

29.     The allegations set forth in Paragraph 29 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

30.     The allegations set forth in Paragraph 30 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

31.     The allegations set forth in Paragraph 31 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

32.     The allegations set forth in Paragraph 32 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

33.     The allegations set forth in Paragraph 33 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

34.     Admitted that Vogt purchased shares of TBA in 2019, 2020 and 2021 and, thus, became a shareholder of the company.  The remaining allegations set forth in Paragraph 34 of the Complaint are otherwise denied, and Vogt specifically denies any suggestion that Vogt's purchase of shares of TBA was "ancillary to" or "exceedingly relevant to" the Employment Agreement.  Indeed, there is no reference to Vogt becoming a shareholder or being awarded shares of TBA as consideration or additional consideration for the Employment Agreement, which, pursuant to Section 8.04 thereof "constitutes the entire understanding of the parties … with respect to the subject matter [t]hereof."  There is no reference to Vogt becoming a shareholder of TBA or being awarded shares of the company in either Article III or Section 4.04 of the Employment Agreement.  That is because there was no connection between Vogt becoming a shareholder of TBA (and Vogt's purchase of shares of the company) and Vogt's execution of the Employment Agreement.

35.     The allegations set forth in Paragraph 35 of the Complaint are denied.  By way of further response, see the Answering Defendants' response to Paragraph 34, above.

36.     The allegations set forth in Paragraph 36 of the Complaint are denied.[1]

37.     The allegations set forth in Paragraph 37 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

38.     Admitted.

39.     The allegations set forth in Paragraph 39 of the Complaint are denied.[2]

---

[1]     If Vogt signed the shareholder agreement, which he denies, Plaintiff surely would have annexed a copy of Vogt's signature page as an exhibit to the Amended Complaint.  It did not.

[2]     Again, if Vogt received and signed an Acknowledgment of Receipt for the TBA Employee Handbook, which Vogt denies, Plaintiff surely would have annexed a copy of Vogt's signature page as an exhibit to the Amended Complaint.  It did not.

10017283v1

40.     The allegations set forth in Paragraph 40 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

41.     The allegations set forth in Paragraph 41 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

42.     The allegations set forth in Paragraph 42 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

43.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 43 of the Complaint, and Plaintiff is left to its proofs.

44.     The allegations set forth in Paragraph 44 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

45.     Admitted.

46.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 46 of the Complaint, and Plaintiff is left to its proofs.

47.     Admitted that McDevitt joined TBA with an investment advisor/portfolio manager named Jim Smartt, who she first met and worked with beginning in 1984.  When she joined TBA, McDevitt worked with Mr. Smartt and then Cliffe Cheston, who succeeded Smartt. In connection with Vogt's hiring and Cliff's eventual retirement (and the succession planning therewith), McDevitt began working with Vogt.  McDevitt also worked with Robert T. Whalen, and McDevitt also filled in when other administrative assistants and support staff were out of the office on medical or maternity leaves.  The remaining allegations set forth in Paragraph 47 of the Complaint are otherwise denied as characterized by Plaintiff.

48.     The allegations set forth in Paragraph 48 of the Complaint are denied.

49.     The allegations set forth in Paragraph 49 of the Complaint are denied.

50.     The allegations set forth in Paragraph 50 of the Complaint are denied.

51.     The allegations set forth in Paragraph 51 of the Complaint are denied.

52.     The allegations set forth in Paragraph 52 of the Complaint are denied.

53.     The allegations set forth in Paragraph 53 of the Complaint are denied.

54.     The allegations set forth in Paragraph 54 of the Complaint are denied.

55.     The allegations set forth in Paragraph 55 of the Complaint are denied.

56.     Admitted that Vogt resigned from his employment with TBA on May 12, 2023, and that a true copy of his Notice of Resignation dated May 12, 2023 is annexed to the Amended Complaint as Exhibit 6 (Docket No. 23-6).  Otherwise denied, as the allegations set forth in Paragraph 56 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

57.     Admitted that in his Notice of Resignation Vogt indicated that he would "continue his financial services career in association with Pine Valley Investments."  Otherwise denied, as the allegations set forth in Paragraph 57 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

58.     Admitted.

59.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 59 of the Complaint, and Plaintiff is left to its proofs.

60.     The allegations set forth in Paragraph 60 of the Complaint are denied.

61.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 61 of the Complaint, and Plaintiff is left to its proofs.

62.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 62 of the Complaint, and Plaintiff is left to its proofs.

63.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 63 of the Complaint, and Plaintiff is left to its proofs.

64.     Admitted that McDevitt received an offer of employment from Pine Valley on or around April 17, 2023.  Otherwise denied.

65.     The allegations set forth in Paragraph 65 of the Complaint are denied.

66.     The allegations set forth in Paragraph 66 are denied as follows:

   a.   The allegations set forth in Paragraph 66(a) are denied;

   b.   The allegations set forth in Paragraph 66(b) are denied;

   c.   The allegations set forth in Paragraph 66(c) are denied;

   d.   Admitted that on January 24, 2023, Vogt emailed to both himself and McDevitt a link to an aggregation of their clients' quarterly reports, or "Flex Packets," for their clients' accounts, which he did because (i) he and McDevitt would review the Flex Packet to check performance in their clients' accounts and needed to prepare for client meetings in Q1 2023, and (ii) McDevitt was working remotely from home from November 30, 2022 through March 5, 2023 while she was recovering from a brain aneurysm surgery, and (iii) it was easier for McDevitt to help Vogt prepare for his client meetings by using the link provided by Vogt to the Flex Packet and having all of their clients' quarterly account information in one place (while she was working from home), where she could easily extract the particular reports and account information Vogt needed for his client meetings.  Vogt emailed the link to the Flex Packet to himself and McDevitt in furtherance of his duties and responsibilities as an employee

of TBA, within the scope of his employment, and to enable him and McDevitt to work together in preparation for his client meetings, and for no other reason. The documents and information contained in those quarterly reports were not used by McDevitt and Vogt - and have not been used by McDevitt or Vogt - for any improper purpose, and were not accessed or used by McDevitt or Vogt in connection with or following the termination of their employment with Plaintiff. The remaining allegations set forth in Paragraph 66(d) of the Complaint are otherwise denied, and the Defendants specifically deny any suggestion that they used the quarterly reports for any improper purpose or unlawful reason;[3]

e. The allegations set forth in Paragraph 66(e) are denied; and

f. The allegations set forth in Paragraph 66(f) are denied.

g. The allegations set forth in Paragraph 66(f) are denied.

67. The allegations set forth in Paragraph 67 of the Complaint are denied.

68. The allegations set forth in Paragraph 68 of the Complaint are denied.

69. The allegations set forth in Paragraph 69 of the Complaint are denied.

70. The allegations set forth in Paragraph 70 of the Complaint are denied.

71. The allegations set forth in Paragraph 71 of the Complaint are denied.

72. The allegations set forth in Paragraph 72 of the Complaint are denied.

73. The allegations set forth in Paragraph 73 of the Complaint are denied.

74. The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 74 of the Complaint, and Plaintiff is left to its proofs.

---

[3] The only reason Vogt and McDevitt accessed the 3,000+ page accumulation of client quarterly reports since their resignation from TBA on May 12, 2023, was for the purpose of providing same to their legal counsel to produce same in discovery in this action, and for no other reason or purpose (let alone improper purpose) whatsoever.

10017283v1

75.     The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 75 of the Complaint, and Plaintiff is left to its proofs.

76.     The allegations set forth in Paragraph 76 of the Complaint are denied.

77.      The allegations set forth in Paragraph 77 of the Complaint are denied.

78.     The allegations set forth in Paragraph 78 of the Complaint are denied.

79.     Admitted that Vogt received a copy of the letter from Sherry Lemonick, LLC dated May 16, 2023, a copy of which is annexed to Plaintiff's Complaint as Exhibit 8 (Docket No. 23-8).  Otherwise denied, as the allegations set forth in Paragraph 79 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

80.     The allegations set forth in Paragraph 80 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

81.     The allegations set forth in Paragraph 81 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

82.     The allegations set forth in Paragraph 82 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

83.     The allegations set forth in Paragraph 83 of the Complaint are denied.  Defendants have never used TBA's allegedly Confidential Information or trade secrets, let alone to the detriment of TBA.

84.     The allegations set forth in Paragraph 84 of the Complaint are denied.

85.     Admitted that Vogt and Pine Valley discussed requiring clients who, on their own accord (a) chose to continue their professional relationship with Vogt and McDevitt at Pine

Valley, and (b) sought to have Vogt and McDevitt (through Pine Valley) continue to manage their investment accounts, sign some form of attestation confirming they had not been solicited by Vogt to transfer the management of their investment accounts from TBA to Pine Valley, which they considered and discussed because Vogt knew (i) despite the fact that the non-solicitation provision in his Employment Agreement was unenforceable as a matter of law because the agreement was not supported by valid, legal consideration, and (ii) despite the fact that Vogt nevertheless did not solicit the business of his clients following his resignation from employment with TBA, TBA's founding principal and President, Maris A. Ogg, would be upset that Vogt and McDevitt resigned from TBA and would not accept that clients might wish to continue their relationships with Vogt and McDevitt, and that Ogg would be vindictive, aggressive and litigious if clients elected to follow Vogt and McDevitt to Pine Valley, and Vogt and Pine Valley desired to protect themselves from any spurious claims pursued or frivolous legal action filed by TBA at the direction of Ogg, a concern that has proven to be true.  The remaining allegations set forth in Paragraph 85 of the Complaint are otherwise denied.

86.    The allegations set forth in Paragraph 86 of the Complaint are denied.

87.    The allegations set forth in Paragraph 87 of the Complaint are denied.

88.    The allegations set forth in Paragraph 88 of the Complaint are denied.

89.    The allegations set forth in Paragraph 89 of the Complaint are denied.

## CLAIMS FOR RELIEF

90.    The Answering Defendants repeat, reallege and incorporate by reference each and every answer contained in the preceding paragraphs of this Answer as if fully set forth herein

91.    The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 91 of the

Complaint concerning what "facts" Plaintiff believes it knows as of the date the Amended Complaint was filed, and Plaintiff is left to its proofs.  The allegations set forth in Paragraph 91 of the Complaint otherwise call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

**COUNT I:**
**Unfair Competition/Raiding**
*(Tower Bridge Advisors, Inc. vs. Pine Valley)*

92.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

93.     The allegations set forth in Paragraph 93 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

94.     The allegations set forth in Paragraph 94 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  To the extent any response is required by these Defendants, the allegations are denied.

95.     The allegations set forth in Paragraph 95 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  To the extent any response is required by these Defendants, the allegations are denied.

96.     The allegations set forth in Paragraph 96 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  To the extent any response is required by these Defendants, the allegations are denied.

97.     The allegations set forth in Paragraph 97 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

98.     The allegations set forth in Paragraph 98 of the Complaint are denied.

10017283v1

99.     The allegations set forth in Paragraph 99 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

100.     The allegations set forth in Paragraph 100 of the Complaint are denied.

101.     The allegations set forth in Paragraph 101 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff, as applicable, on Count I of the Complaint, dismissing Count I of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT II:**
**Unfair Competition/Raiding**
*(Tower Bridge Advisors, Inc. vs. Vogt and McDevitt)*

102.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

103.     The allegations set forth in Paragraph 103 of the Complaint are denied.

104.     The allegations set forth in Paragraph 104 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

105.     The allegations set forth in Paragraph 105 of the Complaint are denied.

106.     The allegations set forth in Paragraph 106 of the Complaint are denied.

107.     The allegations set forth in Paragraph 107 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count II of the Complaint, dismissing Count II of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

Page **14** of **56**

**COUNT III:**
**Breach of Contract**
*(Tower Bridge Advisors, Inc. vs. Vogt)*

108.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

109.    The allegations set forth in Paragraph 109 of the Complaint are denied.

110.    The allegations set forth in Paragraph 110 of the Complaint are denied.

111.    The allegations set forth in Paragraph 111 of the Complaint are denied.

112.    The allegations set forth in Paragraph 112 of the Complaint are denied.

113.    The allegations set forth in Paragraph 113 of the Complaint are denied.

114.    The allegations set forth in Paragraph 114 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count III of the Complaint, dismissing Count III of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT IV:**
**Breach of the Duty of Loyalty and Diversion of Corporate Opportunities**
*(Tower Bridge Advisors, Inc. vs. Vogt and McDevitt)*

115.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

116.    Admitted that both of the Answering Defendants were employees of TBA. The remaining allegations set forth in Paragraph 116 of the Complaint call for a legal conclusion to which no response is required.  To the extent the allegations require a response, the allegations are denied.

117.     The allegations set forth in Paragraph 117 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

118.     The allegations set forth in Paragraph 118 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

119.     The allegations set forth in Paragraph 119 of the Complaint are denied.

120.     The allegations set forth in Paragraph 120 of the Complaint are denied.

121.     The allegations set forth in Paragraph 121 of the Complaint are denied.

122.     The allegations set forth in Paragraph 122 of the Complaint are denied.

123.     The allegations set forth in Paragraph 123 of the Complaint are denied.

124.     The allegations set forth in Paragraph 124 of the Complaint are denied.

125.     The allegations set forth in Paragraph 125 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count IV of the Complaint, dismissing Count IV of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT V:**
**Breach of Fiduciary Duty**
*(Tower Bridge Advisors, Inc. vs. Vogt)*

126.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

127.     Admitted that Vogt was the Co-Chief Investment Officer and a principal of TBA. Otherwise denied.

Page **16** of **56**

128.     The allegations set forth in Paragraph 128 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

129.     The allegations set forth in Paragraph 129 of the Complaint are denied.

130.     The allegations set forth in Paragraph 130 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count V of the Complaint, dismissing Count V of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT VI:**
**Aiding and Abetting Breach of Fiduciary Duty**
*(Tower Bridge Advisors, Inc. vs. Pine Valley)*

131.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

132.     The allegations set forth in Paragraph 132 of the Complaint are denied.

133.     The allegations set forth in Paragraph 133 of the Complaint are denied.

134.     The allegations set forth in Paragraph 134 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  To the extent any response is required by these Defendants, the allegations are denied.

135.     The allegations set forth in Paragraph 135 of the Complaint are denied.

136.     The allegations set forth in Paragraph 136 of the Complaint are denied.

137.     The allegations set forth in Paragraph 137 of the Complaint are denied.

138.     The allegations set forth in Paragraph 138 of the Complaint are denied.

10017283v1

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count VI of the Complaint, as applicable, dismissing Count VI of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT VII:
### Aiding and Abetting Breach of Fiduciary Duty
*(Tower Bridge Advisors, Inc. vs. Pine Valley)*

139.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

140.    The allegations set forth in Paragraph 140 of the Complaint are denied.

141.    The allegations set forth in Paragraph 141 of the Complaint are denied.

142.    The allegations set forth in Paragraph 142 of the Complaint are denied.

143.    The allegations set forth in Paragraph 143 of the Complaint are denied.

144.    The allegations set forth in Paragraph 144 of the Complaint are denied.

145.    The allegations set forth in Paragraph 145 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count VII of the Complaint, as applicable, dismissing Count VII of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT VIII:
### Aiding and Abetting Breach of Fiduciary Duty
*(Tower Bridge Advisors, Inc. vs. Vogt)*

146.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

147.    The allegations set forth in Paragraph 147 of the Complaint are denied.

148.    The allegations set forth in Paragraph 148 of the Complaint are denied.

149.    The allegations set forth in Paragraph 149 of the Complaint are denied.

150.    The allegations set forth in Paragraph 150 of the Complaint are denied.

151.    The allegations set forth in Paragraph 151 of the Complaint are denied.

152.    The allegations set forth in Paragraph 152 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count VIII of the Complaint, dismissing Count VII of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT IX:**
**Violations of the Economic Espionage Act,**
**as Amended by the Defend Trade Secrets Act, 18 U.S.C. § 1831**
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

153.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

154.    The allegations set forth in Paragraph 154 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

155.    The allegations set forth in Paragraph 155 of the Complaint refer to an alleged document that speaks for itself, and any characterizations made by Plaintiff thereof are denied.

156.    The allegations set forth in Paragraph 156 of the Complaint are denied.

157.    The allegations set forth in Paragraph 157 of the Complaint are denied.

158.    The allegations set forth in Paragraph 158 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  Regardless, the allegations are denied.

159.    The allegations set forth in Paragraph 159 of the Complaint are denied.

160.     The allegations set forth in Paragraph 160 of the Complaint are denied.

161.     The allegations set forth in Paragraph 161 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

162.     The allegations set forth in Paragraph 162 of the Complaint are denied.

163.     The allegations set forth in Paragraph 163 of the Complaint are denied.

164.     The allegations set forth in Paragraph 164 of the Complaint are denied.

165.     The allegations set forth in Paragraph 165 of the Complaint are denied.

166.     The allegations set forth in Paragraph 166 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count IX of the Complaint, dismissing Count IX of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT X:**
**Violation of the Pennsylvania Uniform Trade Secrets Act**
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

167.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

168.     The allegations set forth in Paragraph 168 of the Complaint are denied.

169.     The allegations set forth in Paragraph 169 of the Complaint are denied.

170.     The allegations set forth in Paragraph 170 of the Complaint are denied.

171.     The allegations set forth in Paragraph 171 of the Complaint are denied.

172.     The allegations set forth in Paragraph 172 of the Complaint are denied.

10017283v1

173.     The allegations set forth in Paragraph 173 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  Regardless, the allegations are denied.

174.     The allegations set forth in Paragraph 174 of the Complaint are denied.

175.     The allegations set forth in Paragraph 175 of the Complaint are denied.

176.     The allegations set forth in Paragraph 176 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count X of the Complaint, dismissing Count X of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

**COUNT XI:**
**Misappropriation/Conversion**
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

177.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

178.     The allegations set forth in Paragraph 178 of the Complaint are denied.

179.     The allegations set forth in Paragraph 179 of the Complaint are denied.

180.     The allegations set forth in Paragraph 180 of the Complaint are denied.

181.     The allegations set forth in Paragraph 181 of the Complaint are denied.

182.     The allegations set forth in Paragraph 182 of the Complaint are denied.

183.     The allegations set forth in Paragraph 183 of the Complaint are denied.

184.     The allegations set forth in Paragraph 184 of the Complaint are denied.

185.     The allegations set forth in Paragraph 185 of the Complaint are denied.

186.     The allegations set forth in Paragraph 186 of the Complaint are denied.

10017283v1

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XI of the Complaint, dismissing Count XI of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT XII:
## Tortious Interference with Contract (Vogt)
### *(Tower Bridge Advisors, Inc. vs. Pine Valley)*

187.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

188.     The allegations set forth in Paragraph 188 of the Complaint are denied.

189.     The allegations set forth in Paragraph 189 of the Complaint are denied.

190.     The allegations set forth in Paragraph 190 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XII of the Complaint, as applicable, dismissing Count XII of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT XIII:
## Tortious Interference with Business Relationships (McDevitt)
### *(Tower Bridge Advisors, Inc. vs. Vogt and Pine Valley)*

191.     Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

192.     The allegations set forth in Paragraph 192 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

193.     The allegations set forth in Paragraph 193 of the Complaint are denied.

194. The allegations set forth in Paragraph 194 of the Complaint are denied.

195. The allegations set forth in Paragraph 195 of the Complaint are denied.

196. The allegations set forth in Paragraph 196 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XIII of the Complaint, as applicable, dismissing Count XIII of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT XIV:
### Tortious Interference with Business Relationships (Tower Bridge Clients)
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

197. Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

198. The Answering Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 198 of the Complaint, and Plaintiff is left to its proofs.

199. The allegations set forth in Paragraph 199 of the Complaint are denied.

200. It is admitted that clients/customers of investment advisory firms - like TBA and Pine Valley – at all times are entitled and within their right to select who they would like to serve as their financial/investment advisor or investment portfolio manager. The allegations set forth in Paragraph 200 of the Complaint are otherwise denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XIV of the Complaint, dismissing Count XIV of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT XV:
## Civil Conspiracy
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

201.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

202.    The allegations set forth in Paragraph 202 of the Complaint are denied.

203.    The allegations set forth in Paragraph 203 of the Complaint are denied.

204.    The allegations set forth in Paragraph 204 of the Complaint are denied.

205.    The allegations set forth in Paragraph 205 of the Complaint are denied.

206.    The allegations set forth in Paragraph 206 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  Regardless, the allegations are denied.

207.    The allegations set forth in Paragraph 207 of the Complaint are not directed towards the Answering Defendants and, therefore, no response is required.  Regardless, the allegations are denied.

208.    The allegations set forth in Paragraph 208 of the Complaint are denied.

209.    The allegations set forth in Paragraph 209 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XV of the Complaint, dismissing Count XV of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

10017283v1

## COUNT XVI:
## Concert of Action
*(Tower Bridge Advisors, Inc. vs. All Defendants)*

210.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

211.    The allegations set forth in Paragraph 211 of the Complaint are denied.

212.    The allegations set forth in Paragraph 212 of the Complaint are denied.

213.    The allegations set forth in Paragraph 213 of the Complaint are denied.

214.    The allegations set forth in Paragraph 214 of the Complaint are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XVI of the Complaint, dismissing Count XVI of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

## COUNT XVII:
## Intentionally Accessing a Protected Computer in Violation of 18 U.S.C. § 1030(g)
*(Tower Bridge Advisors, Inc. vs. Vogt and McDevitt)*

215.    Defendants incorporate each of the foregoing paragraphs as if each were set forth at length herein.

216.    The allegations set forth in Paragraph 216 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations require a response, the allegations are denied.

217.    The allegations set forth in Paragraph 217 of the Complaint are denied.

218.    The allegations set forth in Paragraph 218 of the Complaint are denied.

219.    The allegations set forth in Paragraph 219 of the Complaint call for legal conclusions to which no response is required.  To the extent the allegations are directed toward

the Answering Defendants as an allegation of culpability, liability or fault, the allegations are denied.

**WHEREFORE**, Defendants James T. Vogt and Jean McDevitt respectfully request judgment in their favor and against Plaintiff on Count XVII of the Complaint, dismissing Count XVII of the Complaint with prejudice, and awarding to Defendants all costs, attorneys' fees, and any such other relief as the Court may deem necessary and proper.

<u>**AFFIRMATIVE DEFENSES**</u>

Defendants James T. Vogt and Jean McDevitt assert the following affirmative defenses without prejudice to the denials set forth in their Answer and without admitting any allegations of the Plaintiff's Complaint not specifically admitted above. Defendants reserve the right to assert additional defenses and/or supplement, alter, and change the Answer upon the revelation of more definite facts by the various parties to this lawsuit.

<u>**FIRST SEPARATE AFFIRMATIVE DEFENSE**</u>

Plaintiff's Amended Complaint fails to state a cause of action upon which relief may be granted. FED.R.CIV.P. 12(b)(6).

<u>**SECOND SEPARATE AFFIRMATIVE DEFENSE**</u>

Defendants Vogt and McDevitt acted in good faith and complied with all applicable laws, rules, regulations, ordinances, standards, and all applicable statutes at all relevant times, complied fully with all applicable standards of care with respect to the matters alleged in the Complaint, and violated no duties owed to Plaintiff, if any, under the common law, by statute or otherwise, at any time(s) and/or in any manner as alleged in the Complaint.

10017283v1

## THIRD SEPARATE AFFIRMATIVE DEFENSE

The Complaint is barred must be dismissed, in whole in part, including specifically but not limited to Counts IX and XI of the Complaint, as Plaintiff's claim of misappropriation has been made in bad faith in violation of 18 U.S.C. § 1836(b)(3)(D) by and as a result of Plaintiff's bad faith and unreasonable belief that Defendants in any way violated the "Defend Trade Secrets Act" and, therefore, Defendants are entitled to the dismissal of those claims and an award of reasonable attorneys' fees as a result of defending and dismissing same.

## FOURTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, in whole or in part, by principles of equity.

## FIFTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendant Vogt are barred and must be dismissed, in whole or in part, because there is no valid, legal consideration for the Employment Agreement signed by Vogt as alleged in the Complaint and, therefore, any and all of Plaintiff's claims which are predicated on the enforceability of that Employment Agreement must be dismissed, and Defendant Vogt should be awarded reasonable counsel fees and costs as a consequence of having to defend against such frivolous claims as countenanced by Section 8.08 of the Employment Agreement.

## SIXTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendant McDevitt are barred and must be dismissed, in whole or in part, because McDevitt is not bound by any post-employment non-solicitation covenant, restriction or agreement with Plaintiff.

## SEVENTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands and Plaintiff's own unclean hands.

## EIGHTH SEPARATE AFFIRMATIVE DEFENSE

Defendant incorporates all separate defenses which have been or will be pled by any party to this action to the extent these defenses are applicable to Defendant.

## NINTH SEPARATE AFFIRMATIVE DEFENSE

The Complaint was filed with an improper motive, in bad faith, and has no evidential or legal basis, and thus constitutes a frivolous action in violation of FED.R.CIV.P. 11(b), and warrants the imposition of sanctions and penalties authorized thereunder, as Plaintiff filed this action for improper reasons such as: (1) to interfere with the Answering Defendants' new employment relationship with Defendant Pine Valley Investments, LLC, and the Answering Defendants' business relationships with their clients; and (2) to avoid or reduce Plaintiff's legal obligation to purchase and redeem Defendant Vogt's shares of stock in the Company as required under Sections 4 and 5 of Shareholders' Agreement of TBA.  Rule 11(b) of the Federal Rules of Civil Procedure requires that a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Here, Plaintiff has filed this action to harass Defendants and needlessly delay, if not unlawfully attempt to avoid, Plaintiff's own obligation to redeem from Defendant Vogt the shares of stock held by Vogt.  Furthermore, Rule 11(b) requires that "the factual contentions have evidentiary support or … will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." However, Plaintiff and its counsel know – and have been so advised – that there is no evidentiary basis for their claims, yet Plaintiff persists in the prosecution of this frivolous action and, instead of voluntarily dismissing and withdrawing the action, Plaintiff and its counsel filed the Amended Complaint.  Thus, pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, demand is hereby made that Plaintiff immediately withdraw and dismiss its Complaint, with prejudice, or, upon

10017283v1

Defendants' successful defense of this action, Defendants shall seek the recovery of legal fees, litigation costs and other expenses incurred by Defendants in connection with the defense of the Complaint, as well as any other damages for harm caused to Defendants as a consequence of having to defend this action, including but not limited to any harm to Defendants' reputations by any defamatory matter alleged by Plaintiff as a basis for bringing this action.

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

By:     */s/ Benjamin E. Widener*
         Benjamin E. Widener (ID #202569)
         Princeton South Corporate Center
         100 Charles Ewing Boulevard, Suite 140
         Ewing, NJ 08628
         jmacdonald@constangy.com
         (609) 357-1187 (tel)
         (609) 844-1102 (fax)
         *Attorneys for Defendants*
         *James T. Vogt and Jean McDevitt*

Dated: August 23, 2023

10017283v1

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendants/Counter-Claimants/Third-Party Plaintiffs James T. Vogt ("Vogt") and Jean McDevitt ("McDevitt" or, collectively with Vogt, "Defendants" or the "Answering Defendants"), by and through their attorneys, hereby assert the following Counterclaims against Plaintiff/Counter-Defendant Tower Advisors, Inc. ("TBA," the "Company," or "Plaintiff") and Third-Party Complaint against Third-Party Defendants Maris A. Ogg ("Ogg") and James M. Meyer ("Meyer"), and in support of same allege and state as follows:

## PARTIES AND JURISDICTION

1.      Vogt is a former employee, principal and co-chief investment officer of TBA, and continues to be a shareholder of TBA, who resides in New Jersey.

2.      McDevitt is a former employee of TBA who resides in New Jersey.

3.      Plaintiff/Counterclaim-Defendant TBA is an investment advisory firm which maintains its principal place of business in Conshohocken, Pennsylvania.

4.      Third-Party Defendant Maris A. Ogg is a founding principal, President and shareholder of TBA.

5.      As of June 30, 2019, Ogg owned 40,742 shares of TBA's common stock, which constituted 29.0% of the total shares of common stock issued by the Company at that time.  As of June 30, 2019, Ogg was the largest shareholder of TBA.

6.      Upon information and belief, Ogg continues to be the largest shareholder of TBA.

7.      Ogg resides in Flourtown, Pennsylvania, and thus is domiciled in the Commonwealth of Pennsylvania for the purpose of diversity of citizenship.

8.      Third-Party Defendant James M. Meyer is a founding principal, Chairman of the Investment Committee, and Chief Investment Officer of TBA.

9.      As of June 30, 2019, Meyer owned 40,420 shares of TBA's common stock, which constituted 28.8% of the total shares of common stock issued by the Company at that time.  As of June 30, 2019, Meyer was the second largest shareholder of TBA

10.      Upon information and belief, Meyer continues to be the second largest shareholder of TBA.

11.      According to TBA's website, Meyer resides in Rydal, Pennsylvania, and thus is domiciled in the Commonwealth of Pennsylvania for the purpose of diversity of citizenship.

12.      Jurisdiction over these Counterclaims and Third-Party Claims is proper in this Court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367(a).

## GENERAL ALLEGATIONS

### Vogt's Employment and Shareholder Rights

13.      Vogt has worked in the investment advisory industry for his entire professional career.

14.      Prior to his employment with TBA, Vogt worked for Merrill Lynch, and then spent almost twenty years at Valley Forge Asset Management, where he worked in various roles including operations and trading, portfolio management and institutional sales.  At Valley Forge Asset Management, Vogt served as an investment adviser representative and broker-dealer agent, and he eventually rose to become the company's Co-Chief Investment Officer.

15.      Vogt has passed the following state securities, general industry and principal/supervisory exams: Series 7; Series 66; Series 55; Series 24; Series 53; and the SIE (Securities Industry Essentials Examination).  Vogt passed all these exams and received the attendant licenses prior to his employment with TBA.

16.      Vogt has never been the subject of a client complaint.

17.     Vogt has no disciplinary history with any of his employers, including TBA, and has no "disclosures" on his FINRA BrokerCheck report.[4]

18.     Vogt received his offer of employment from TBA on or about January 4, 2016.

19.     Vogt became employed by TBA on or around January 28, 2016 as a "Senior Portfolio Manager."

20.     From the inception of his employment through his resignation from TBA on or about May 12, 2023, Vogt received the same compensation package, salary and benefits from TBA.

21.     Vogt was informed at the inception of his employment with TBA that he would become eligible for TBA share options after one year of employment with the firm, and that his stock ownership would be subject to the Company's shareholder agreement.

22.     Vogt has purchased 6,358 shares of common stock of TBA at a total cost of $302,962.40 during his employment with the Company.

23.     TBA is a closely held corporation incorporated under the laws of the Commonwealth of Pennsylvania.

24.     As of June 30, 2019, there were only ten (10) shareholders of TBA, including TBA itself as a holder of treasury shares.

---

[4]     The Financial Industry Regulatory Authority, Inc. ("FINRA") is an independent, nongovernmental organization that writes and enforces the rules governing registered brokers and broker-dealer firms in the United States, which was created as the result of the consolidation of the National Association of Securities Dealers (NASD) and the member regulation, enforcement, and arbitration operations of the New York Stock Exchange (NYSE). FINRA, which is authorized by Congressional authority, is the largest independent regulatory body for securities firms operating in the United States. FINRA provides resources, such as BrokerCheck, which are designed to protect investors. "Disclosures" on an adviser's BrokerCheck Report can be customer complaints or arbitrations, regulatory actions, employment terminations, bankruptcy filings and certain civil or criminal proceedings that they were a part of.

10017283v1

25.     Under Section 4.1.6 of the Amended and Restated Shareholders' Agreement of TBA (as used herein, the "Shareholder Agreement"), "[u]pon the termination of an Affected Shareholder's employment with the Company for any reason, the Shareholder … shall be deemed to have made an offer to sell all of his Shares first to the Company and then to the other Shareholders in accordance with subsections 2.1 and 2.2" of the Shareholder Agreement.

26.     Sections 2.1, 2.2, 2.3, 4.1.6, and Section 5 of the Shareholder Agreement provide the governing sections, procedures, price, and payment terms concerning the purchase, redemption, sale, and valuation of an Affected Shareholder's shares of common stock to the Company and/or the remaining shareholders of the Company following the termination of the Affected Shareholder's employment with the Company.

27.     Under Section 2.4 of the TBA Shareholder Agreement, the closing of the sale of an Affected Shareholder's shares to the Company and/or the Non-Selling Shareholders "shall be held ninety days after the date of the Notice of the Offer."

28.     Under Section 4.1 of the Shareholder Agreement, Vogt's resignation and termination of his employment with TBA on May 12, 2023, was a "Triggering Event" which was "deemed to have made an offer to sell of his shares" to the Company and/or the Non-Selling Shareholders.

29.     August 10, 2023 was ninety (90) days from May 12, 2023.

30.     As there was no other mutually agreed-upon "Purchase Date" between Vogt and TBA, the closing on the sale of Vogt's shares of common stock should have occurred as of August 10, 2023.

31.     The closing on Vogt's mandatory offer to sell his shares pursuant to Section 4.1.6 of the Shareholder Agreement has not occurred.

32.     Section 5.2.1 of the Shareholder Agreement provides the Valuation Formula for the sale price of the Selling Shareholder's shares of common stock.

33.     As of June 30, 2019, the Valuation Formula was (1.00 x Fee Revenue) / Total # of Shares Outstanding.

34.     Upon information and belief, the Valuation Formula was amended by TBA's Board of Directors to use a 1.5X Fee Revenue.

35.     Upon information and belief, the redemption or Agreement Price of Vogt's shares of common stock of TBA is valued at an amount not less than $750,000.00.

36.     To date, TBA has neither noticed its intention to Vogt to purchase or redeem Vogt's shares of common stock, identified the Agreement Price for the Offered Shares to be purchased or redeemed by TBA or the Non-Selling Shareholders, or set a closing date for the buy-sell transaction.

## McDevitt's Employment and the Legacy Clients

37.     Like Vogt, McDevitt has worked in the investment advisory industry for her entire professional career.

38.     McDevitt began her career in the investment advisory industry in 1984 as an administrative assistant with Janney Montgomery Scott ("Janney") in 1984.

39.     McDevitt first met Jim Smartt, an investment advisor and portfolio manager, at Janney.

40.     In or around October 1999, Smartt solicited McDevitt to work with him at Walnut Asset Management, LLC ("Walnut") as his administrative assistant.  McDevitt worked with Smartt at Walnut from 1999 to in or around November 2007.

41.    In her time working with Smartt and Janney and Walnut, Smartt and McDevitt established a substantial client base.  These clients, or "Legacy Clients," hired Smartt and McDevitt and began working with Smartt and McDevitt before Smartt and McDevitt joined TBA.  McDevitt had thirty-nine (39) established legacy relationships.  These Legacy Clients were preexisting clients of Smartt and McDevitt before they became employed by TBA.

42.    McDevitt became employed by TBA as a "Senior Portfolio Administrator" on or around November 19, 2007.

43.    McDevitt continued to work with Smartt at TBA as his administrative assistant, and they continued to work for and manage the investment accounts of the 39 Legacy Clients who followed McDevitt and Smartt from Walnut and transitioned the management of their portfolio to McDevitt and Smartt and TBA.

44.    Smartt resigned from TBA and his management of the Legacy Clients' accounts transitioned to Cliffe Cheston and, eventually, Vogt.

45.    While the Legacy Clients were new clients of Vogt in or around 2016, the Legacy Clients had been clients of McDevitt long before she became employed by TBA.

46.    McDevitt knew and had access to the Legacy Clients' contact information before she became employed by TBA.

47.    McDevitt knew and had access to the Legacy Clients' account information before she became employed by TBA.

48.    At all times relevant to the subject matter of this action, including the time before McDevitt became employed by TBA, McDevitt enjoyed personal and professional relationships with her Legacy Clients.

49.     The very term "Legacy Clients" connotes that they were clients of McDevitt before she became employed by TBA.

50.     At all relevant times, the Legacy Clients have maintained a connection with and allegiance to McDevitt (and Vogt, as they did with Smartt), not TBA.

51.     McDevitt has never signed an employment agreement with TBA.

52.     McDevitt has never signed any non-solicitation agreement or non-compete agreement with TBA.

**The Resignations of Vogt and McDevitt, and TBA's Retaliation**

53.     Vogt and McDevitt both resigned from TBA on May 12, 2023.

54.     In her resignation letter to TBA, McDevitt wrote as follows:

> I trust Tower Bridge will comply with its obligations, not only to me but also to the clients whose interests I have served as their trusted advisor, including the clients I brought to Tower Bridge when I joined the firm. Tower Bridge is not permitted to obfuscate the fats that I am voluntarily resigning on good terms, my last day with the company was today and that I am continuing my career with Pine Valley Investments at the address stated above.  To this end, if a client or anyone else asks about my resignation, including the identity and contact information for my new employer, Tower Bridge is obligated to respond truthfully to the inquiry. Likewise, if a client or anyone else asks for my personal contact information, Tower Bridge is required to furnish the information to them. To avoid any doubt about the matter, I authorize and direct Tower Bridge to furnish my personal and new firm's contact information to any customer or other personal who asks for it.

55.     McDevitt's resignation letter further provides:

> I authorize and direct Tower Bridge to share Pine Valley Investment's and my personal contact information with the clients I served, including those who I introduced to Tower Bridge, and any other person who asks for it.  Tower Bridges owes the clients whom I have served an obligation to keep them timely informed of my departure and ensuing association with Pine Valley Investments.  This obligation means that in its "communications with customers, information provided by [the firm] about [me] must be fair, balanced and not misleading."

56.     Vogt's resignation contains similar language about TBA's obligation to provide truthful information regarding his separation of employment from TBA and new employment with Pine Valley.  Additionally, Vogt's resignation letter provides:

> I presume Tower Bridge does not question that elemental proposition that a broker-client relationship … is a personal relationship dependent on personal trust.  Clients should be free to deal with the broker of their choosing and not subjected to the turnover of their accounts to brokers associated with the firm but unfamiliar to the client unless the client gives informed consent to the turnover.

57.     Vogt's resignation letter also quotes FINA Regulatory Notice 19-10 and provides: "To 'ensure that customers can make a timely and informed choice about where to maintain their assets' in the wake of my departure, Tower Bridge is obligated to 'provide customers with timely and complete answers, if known, when the customer asks questions about [me]."

58.     After Vogt and McDevitt resigned from TBA, TBA, Ogg and Meyer retaliated against Vogt and McDevitt by commencing a campaign to smear them, besmirch their professional reputations, and spread falsehoods about them.

59.     Since he resigned, Vogt has learned that TBA, Ogg and Meyer told clients of Vogt and McDevitt – or suggested or insinuated to clients of Vogt and McDevitt - that Vogt had left the industry and was no longer working as an investment advisor representative.

60.     According to another client, Ogg shared that Vogt had accepted a position with a different firm as its Chief Financial Officer, and the client was misled to believe Vogt was not in the same industry and would not be able to manage the client's money anymore.

61.     According to yet another client, Ogg represented that Vogt had left TBA and abandoned his clients.

62.     Since his resignation from TBA, Vogt has gathered from many clients that they were misled by TBA, directly or indirectly from Ogg and Meyer, to believe Vogt had left the investment advisory industry.

63.     According to a client, Ogg represented to the client that she had called Vogt several times but not received any response from him.

64.     All of these statements and representations are false.

65.     TBA, Ogg and Meyer knew these statements were false when they made them.

66.     TBA, Ogg and Meyer made these representations and statements to clients of Vogt and McDevitt with reckless regard to their truth or falsity.

67.     Even when TBA, Ogg and Meyer made truthful statements to clients of Vogt and McDevitt about the departure of Vogt and McDevitt from TBA, the facts Ogg and Meyer shared with clients of Vogt and McDevitt in context implied a falsehood, which was the intention of Ogg and Meyer.

68.     TBA, Ogg and Meyer made these false statements, misrepresentations and lies about Vogt and McDevitt in the exercise of bad faith with the intention of damaging Vogt and McDevitt's personal and professional reputations and to interfere with Vogt and McDevitt's relationships with their clients.

69.     TBA, Ogg and Meyer made these false statements, misrepresentations and lies about Vogt and McDevitt in violation of FINRA Regulatory Notice 19-10 and in breach of their own fiduciary obligations to Vogt and McDevitt's clients.

**TBA's Wrongful, Improper and Malicious Issuance of Non-Party Subpoenas**

70.     TBA commenced this action against Vogt and McDevitt on May 25, 2023.

71.     A hearing on Plaintiff's motion for a temporary restraining order and preliminary injunction was scheduled for June 27, 2023, at 10:00 a.m. (the "PI Hearing").

72.     On or around June 8, 2023 or June 9, 2023, TBA, through its attorneys of record in this case, issued non-party subpoenas to certain clients of Vogt and McDevitt to appear and testify at the PI Hearing.

73.     TBA, through its attorneys, issued not less than thirty-five (35) non-party subpoenas to Vogt and McDevitt's clients directing them to appear at the PI Hearing.

74.     TBA, through its attorneys, issued these Non-Party Subpoenas only to clients of Vogt and McDevitt who had indicated their intention to transition the management of their investment accounts from TBA to Pine Valley.

75.     TBA, through its attorneys, did not issue non-party subpoenas to clients who had indicated their intention to continue their investment advisory relationship with TBA.

76.     The non-party subpoenas issued on or about June 9, 2023 (hereinafter, the "Non-Party Subpoenas") by TBA, through its attorneys of record in this case, were not hand-delivered to the recipients.

77.     The Non-Party Subpoenas issued by TBA, through its attorneys of record in this case, were delivered via Federal Express.

78.     Rule 45(b)(1) of the Federal Rules of Civil Procedure requires that non-party subpoenas be personally served.

79.     TBA, through its attorneys, did not properly serve the Non-Party Subpoenas.

80.     Rule 45(b)(1) of the Federal Rules of Civil Procedure provides: "if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."

81.    TBA, through its attorneys, failed to enclose with the Non-Party Subpoenas the required fee for one (1) day's attendance at the PI Hearing, as well as the mileage allowance as required by law.

82.    Certain of the Non-Party Subpoenas were delivered to clients of Vogt and McDevitt who live beyond 100 miles of the United States District Court for the Eastern District of Pennsylvania Courthouse located in Philadelphia, Pennsylvania.

83.    Certain of the Non-Party Subpoenas served by TBA, though its attorneys of record in this case, were served on clients of Vogt and McDevitt who reside in California, Illinois, Massachusetts and Florida.

84.    California, Illinois, Massachusetts and Florida all are well beyond 100 miles from Philadelphia, Pennsylvania.

85.    Rule 45(c)(1) of the Federal Rules of Civil Procedure provides: "A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."

86.    By issuing the Non-Party Subpoenas to clients of Vogt and McDevitt who resided more than 100 miles from this Court, TBA, through its attorneys of record in this case, violated FED.R.CIV.P. 45(c)(1).

87.    Neither TBA nor its attorneys could have reasonably expected certain Non-Party Witnesses residing more than 100 miles from this Court to appear for the PI Hearing.  The subpoenas were served on these clients merely to harass the clients, Vogt and McDevitt.

88.     The scope of the Non-Party Subpoenas served by TBA, through its attorneys of record in this case, was overly broad and sought the production of testimony and documents irrelevant to the PI Hearing.

89.     Clearly, the purpose of the Non-Party Subpoenas served by TBA, through and with the assistance of its attorneys of record in this case, was to harass, intimidate, burden and retaliate against (i) clients of Vogt and McDevitt who had transitioned the management of their investment accounts from TBA to Pine Valley, and (ii) Vogt and McDevitt themselves by interfering with the business relationship they enjoyed with their clients.

90.      On or about June 20, 2023, Non-Party Lyn Davis ("Davis"), through her legal counsel, moved to quash the Non-Party Subpoena she received from TBA's attorneys (Docket No. 11).

91.     On June 22, 2023, this Court entered an Order granting Davis's motion to quash (Docket No. 13).

92.     In the Order, the Court found the subpoena served on Davis was not properly served and was facially invalid ((Docket No. 13 at *n.* 1.)

93.     In the Order, the Court, quoting Rule 45(d) of the Federal Rules of Civil Procedure, expressed: "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

94.     TBA and its attorneys clearly used the Non-Party Subpoenas to accomplish an ulterior purpose for which the civil process (the service of non-party witness hearing or trial subpoenas) was not designed.

95.     TBA and its attorneys served the Non-Party Subpoenas on Vogt and McDevitt's clients, targeting only those clients who had expressed interest or their intention in transitioning the management of their investment accounts to Pine Valley, to prevent those clients from moving their accounts to Pine Valley and/or to retaliate against those clients who already had moved their accounts from TBA to Pine Valley.

96.     TBA and its attorneys clearly used the Non-Party Subpoenas as a means of retaliating against Vogt and McDevitt for resigning from TBA.

97.     Neither TBA nor its attorneys could reasonably expect to call thirty-five (35) or more non-party witnesses to give testimony at the PI Hearing.  Yet, TBA, through its attorneys, served more than 35 Non-Party Subpoenas on Vogt and McDevitt's clients.

98.     Realistically speaking, it would be impossible to have 35+ non-party witnesses give testimony during a 1-day, limited evidentiary hearing.  Even if only one-half of the non-party witnesses were to appear for the PI Hearing, it would be impracticable – if not impossible – for 17 or 18 non-party witnesses to give testimony at a 1-day PI Hearing, especially when considering the parties likely would give testimony and there would be argument presented by the parties' legal counsel.

99.     TBA, through its attorneys of record in this case, wholly failed to comply with FED.R.CIV.P. 45, as none of the Non-Party Subpoenas were properly served.  This is further evidence that TBA and its attorneys issued the Non-Party Subpoenas for an improper, ulterior purpose.  Rather than properly serving the Non-Party Subpoenas and intending to call the clients as witnesses at the PI Hearing, TBA and its attorneys issued the subpoenas merely to harass and retaliate against Vogt, McDevitt, and their clients.

100.     TBA's issuance of the Non-Party Subpoenas wrongfully interfered with the relationships shared by and between Vogt and McDevitt and their clients.

101.     TBA issued the Non-Party Subpoenas for the improper purpose of interfering with the relationships enjoyed by and between Vogt and McDevitt with their clients.

102.     Certain clients of Vogt and McDevitt decided against transitioning the management of their accounts from TBA to Pine Valley as a result of the Non-Party Subpoenas issued by TBA and its attorneys of record in this case.

103.     Vogt and McDevitt have suffered monetary and reputational harm as a result of TBA's malicious and deliberate misuse of the Non-Party Subpoenas.

## FIRST COUNT
### Breach of Contract
*(Vogt v. TBA, Ogg and Meyer)*

104.     Counter-Claimants/Third-Party Plaintiffs Vogt and McDevitt repeat and reallege each of the foregoing paragraphs as if each were fully set forth herein.

105.     Vogt is a shareholder of TBA.

106.     Vogt's stock ownership is subject to TBA's Shareholder Agreement.

107.     TBA is a party and signatory to the Shareholder Agreement, with Ogg authorized to sign the Shareholder Agreement as TBA's President.

108.     Ogg and Meyer are independent parties and signatories to the Shareholder Agreement and are the two largest shareholders of TBA.

109.     The Shareholder Agreement commands that Vogt's shares of common stock of TBA must be purchased or redeemed by PDA and/or the Non-Selling Shareholders.

110.     TBA, Ogg and Meyer, independently and collectively, have breached the terms of the Shareholder Agreement by failing or refusing to accept Vogt's offer to sell his shares, by

failing and refusing to schedule a closing on the sale of Vogt's shares, and by otherwise failing to comply with the terms of the Shareholder Agreement with respect to their obligatory purchase or redemption of Vogt's shares of common stock.

111.    As a direct and proximate result of the Counter-Defendant's and Third-Party Defendants' breach of the Shareholder Agreement, Vogt has suffered and will continue to suffer monetary damages in an amount not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

112.    Based on the foregoing wrongful conduct of TBA, Ogg and Meyer, Vogt is entitled to an award of damages to be determined at trial.

**WHEREFORE,** Defendant/Counter-Claimant/Third-Party Plaintiff James T. Vogt hereby demands that judgment be entered in his favor and against Plaintiff/Counter-Defendant Tower Bridge Advisors, Inc. and Third-Party Defendants Maris A. Ogg and James M. Meyer, jointly and severally, on his breach of contract claim, and that he be awarded equitable, declaratory and injunctive relief requiring TBA, Ogg and/or Meyer to purchase or redeem his shares of common stock as required by the Shareholders Agreement, and for other compensatory damages, incidental damages, consequential damages, punitive damages, pre- and post-judgment interest at the prevailing legal rate, attorneys' fees and cost of suit, and any such other relief as this Court may deem necessary, appropriate and just.

**SECOND COUNT**
**<u>Breach of Fiduciary Duty</u>**
*(Vogt v. TBA, Ogg and Meyer)*

113.    Counter-Claimants/Third-Party Plaintiffs Vogt and McDevitt repeat and reallege each of the foregoing paragraphs as if each were fully set forth herein.

114.    TBA is a closely-held corporation under Pennsylvania law.

10017283v1

115.    Ogg and Meyer together own more than fifty percent (50%) of TBA's shares of common stock.

116.    Vogt is a minority shareholder of TBA.

117.    TBA, Ogg and Meyer each owe fiduciary duties to Vogt as shareholders of TBA.

118.    As majority shareholders and founding principals of TBA, Ogg and Meyer independently and collectively owe fiduciary duties to Vogt as a minority shareholder of the Company.

119.    Ogg and Meyer have breached their fiduciary duties owed to Vogt by engaging in self-dealing for the betterment of their own self-interests as majority shareholders of TBA to the detriment of Vogt (and other minority shareholders of TBA) and by failing or refusing to partake in the necessary processes and procedures to redeem or purchase Vogt's shares of common stock in TBA now that Vogt is no longer employed by the Company.

120.    As a direct and proximate result of Ogg and Meyers' breaches of their fiduciary duties owed to Vogt, Vogt has suffered and will continue to suffer damages.

121.    Based on the foregoing breach of fiduciary duty by TBA, Ogg and Meyer, Vogt is entitled to an award of damages to be determined at trial.

**WHEREFORE,** Defendant/Counter-Claimant/Third-Party Plaintiff James T. Vogt hereby demands that judgment be entered in his favor and against Plaintiff/Counter-Defendant Tower Bridge Advisors, Inc. and Third-Party Defendants Maris A. Ogg and James M. Meyer, jointly and severally, on his breach of fiduciary duty claim, and that he be awarded equitable, declaratory and injunctive relief requiring TBA, Ogg and/or Meyer to purchase or redeem his shares of common stock as required by the Shareholders Agreement, and for other compensatory damages, incidental damages, consequential damages, punitive damages, pre- and post-judgment

interest at the prevailing legal rate, attorneys' fees and cost of suit, and any such other relief as this Court may deem necessary, appropriate and just.

## THIRD COUNT
## Minority Shareholder Oppression
### *(Vogt v. TBA, Ogg and Meyer)*

122.    Counter-Claimants/Third-Party Plaintiffs Vogt and McDevitt repeat and reallege each of the foregoing paragraphs as if each were fully set forth herein.

123.    For the reasons alleged and described herein, TBA (through its agents, shareholders, principals and officers), and specifically Ogg and Meyer, have frustrated Vogt's reasonable expectations as a shareholder of TBA by failing or refusing to appropriately purchase or redeem his shares of TBA stock as required by the Shareholder Agreement.

124.    Since his resignation of employment from TBA, TBA (through its agents, shareholders, principals and officers), and particularly Ogg and Meyer, has frozen out Vogt as Vogt is no longer privy to the Company's financial records and, therefore, is unable to calculate or determine the value of his shareholder interest in the Company.

125.    It is well-settled that Courts have wide latitude to fashion an appropriate remedy for minority shareholder oppression under Pennsylvania law, the most common remedy for oppression being the buyout of the oppressed shareholder's stockholdings in the company.

126.    If TBA, Ogg and Meyer are permitted to block Vogt's access to the Company's books and records, Ogg and Meyer will be able to limit Vogt's knowledge and information relating to the operation of the business and the Company's financials, which could cause significant harm to Vogt's interest in the business and ability to accurately value his shareholder interest in the Company.

127.    Vogt is contractually entitled to the buyout of his stock in TBA.

128. As a minority shareholder, Vogt has a right of inspection of TBA's book and records under 15 Pa.C.S. § 1508, and thus has a right to an accounting to determine the value of his shares of common stock in the Company.

129. As the majority shareholders of TBA, Ogg and Meyer have a duty to protect the interests of Vogt as a minority shareholder.

130. Ogg and Meyer have prejudiced and oppressed Vogt's rights and interests, and specifically his right of access to the books and records of the Company and his right to a buyout of his shareholder interest in the Company, in violation of Pennsylvania's minority oppression laws.

**WHEREFORE,** Defendant/Counter-Claimant/Third-Party Plaintiff James T. Vogt hereby demands that judgment be entered in his favor and against Plaintiff/Counter-Defendant Tower Bridge Advisors, Inc. and Third-Party Defendants Maris A. Ogg and James M. Meyer, jointly and severally, on his minority oppression claim, and that he be awarded equitable, declaratory and injunctive relief including (i) providing Vogt access to TBA's financial books and records, (ii) awarding Vogt the right to an accounting, and (iii) requiring TBA, Ogg and/or Meyer to purchase or redeem his shares of common stock as required by the Shareholders Agreement, and for other compensatory damages, incidental damages, consequential damages, punitive damages, pre- and post-judgment interest at the prevailing legal rate, attorneys' fees and cost of suit, and any such other relief as this Court may deem necessary, appropriate and just.

10017283v1

**FOURTH COUNT**
**Defamation**
*(Vogt and McDevitt v. TBA, Ogg and Meyer)*

Counter-Claimants/Third-Party Plaintiffs Vogt and McDevitt repeat and reallege each of the foregoing paragraphs as if each were fully set forth herein.

131.    As set forth above in Paragraphs 58 to 69, TBA (through its agents, principals, officers and/or employees), Ogg and Meyer made false, purposefully misleading and defamatory statements regarding Vogt and McDevitt.

132.    The false, misleading and defamatory statements made by TBA (through its agents, principals, officers and/or employees), Ogg and Meyer were published and communicated to third-parties, namely, to Vogt and McDevitt's clients.

133.    To the extent TBA, Ogg and/or Meyer did not explicitly communicate or publish a slanderous statement about Vogt and/or McDevitt, they disguised their defamatory statements in such a context that ultimately misled the third-party (Vogt and McDevitt's clients) into believing Vogt and/or McDevitt had retired from the investment advisory industry and/or could not longer serve as their investment advisor representatives, thus causing defamation by implication.

134.    Under Pennsylvania law, defamation by implication occurs when true facts in a certain context imply a falsehood.  The Pennsylvania Superior Court has stated that "the literal accuracy of separate statements will not render a communication 'true' where [ ] the implication of the communication as a whole was false."

135.    TBA (through its agents, principals, officers and/or employees), Ogg and Meyer knew the statements to be false or misleading when they made the statements to Vogt and McDevitt's clients.

136.     To the extent TBA, Ogg and Meyer did not know the statements they were making to be explicitly false, they acted negligently or outside of the scope of how a reasonable person in similar circumstances would act in making the defamatory and otherwise harmful suggestive statements about Vogt and/or McDevitt to their clients.

137.     Furthermore, the statements made by TBA (through its agents, principals, officers and/or employees), Ogg and Meyer about Vogt and/or McDevitt were defamatory *per se* because the statements prejudiced Vogt and McDevitt's occupation, business, trade or profession.

138.     The statements made by TBA (through its agents, principals, officers and/or employees), Ogg and Meyer about Vogt and/or McDevitt, such as the statement or suggestion that Vogt and McDevitt had left the investment advisory industry, were defamatory *per se* because they were harmful about Vogt and McDevitt's occupation, business, trade or profession.

139.     Because the statements made by TBA, Ogg and Meyer were defamatory *per se*, damages are presumed and do not need to be proven by Vogt or McDevitt.

140.     As a result of the defamatory statements made by TBA, Ogg and Meyer, Vogt and McDevitt have suffered injury and har to their good personal and professional reputations, economic loss from the loss of clients, and damages for personal humiliation, emotional distress and mental anguish.

141.     Based on the foregoing wrongful conduct of TBA, Ogg and Meyer, Vogt and McDevitt are entitled to awards of general damages, special damages, exemplary damages, and other damages arising from the defamatory statements made about them in an amount not less than One Million Dollars ($1,000,000.00).

**WHEREFORE,** Defendant/Counter-Claimant/Third-Party Plaintiffs James T. Vogt and Jean McDevitt hereby demand that judgment be entered in their favor and against Plaintiff/

Counter-Defendant Tower Bridge Advisors, Inc. and Third-Party Defendants Maris A. Ogg and

James M. Meyer, jointly and severally, on their defamation claims, and that they be awarded

damages in an amount to be proven at trial for their reputational harm, general damages in

compensation for the harm to their reputation and for their humiliation and/or emotional distress,

special damages arising from the economic loss they have suffered as a result of the defamatory

statements, and exemplary or punitive damages to punish TBA, Ogg and Meyer for their extreme

and outrageous conduct, plus pre- and post-judgment interest at the prevailing legal rate,

attorneys' fees and cost of suit, and any such other relief as this Court may deem necessary,

appropriate and just.

## FIFTH COUNT
### Abuse of Process
*(Vogt and McDevitt v. TBA, Ogg and Meyer)*

142.    Counter-Claimants/Third-Party Plaintiffs Vogt and McDevitt repeat and reallege

each of the foregoing paragraphs as if each were fully set forth herein.

143.    As set forth above in Paragraphs 71 to 103, TBA, whether through Ogg, Meyer,

or other agents, employees, principals or representatives of TBA, including but not limited to

TBA's legal counsel, used legal process for an unlawful purpose.

144.    Upon information and belief, TBA, through Ogg and Meyer, instructed their

attorneys of record in this case to engage in a mass proliferation of non-party subpoenas targeted

at clients who had defected from TBA to Pine Valley to harass and retaliate against those clients

for deciding to stay with Vogt and McDevitt as their investment advisor representatives and

transition the management of their investment accounts to Pine Valley and, thus, embroiling

those clients in this litigation.

145.    Upon information and belief, TBA, through Ogg and Meyer, instructed their attorneys of record in this case to engage in a mass proliferation of non-party subpoenas targeted at clients who had expressed their interests in potentially defecting from TBA to Pine Valley to freeze those clients and deter them from transferring the management of their accounts to Pine Valley and, thus, becoming embroiled in this litigation.

146.    TBA, Ogg and Meyer used the subpoena power to accomplish a purpose for which the process was not designed.

147.    TBA, Ogg and Meyer knew, or reasonably should have known, that there was no way their attorneys could possibly call 35+ non-party witnesses at the PI Hearing.

148.    As evidence that TBA, Ogg and Meyer did not use the legal process – in this instance the non-party subpoena power – to accomplish a purpose for which the process was truly designed (namely, to actually command non-party witnesses to appear and give testimony at the PI Hearing), TBA, Ogg and Meyer instructed their attorneys of record to serve the Non-Party Subpoenas on witnesses that were well beyond the 100-mile rule under FED.R.CIV.P. 45(c)(1) and not subject to the jurisdiction of this Court and, therefore, could not be compelled to appear and give testimony.

149.    As further evidence that TBA, Ogg and Meyer did not use the legal process – in this instance the non-party subpoena power – to accomplish a purpose for which the process was truly designed (namely, to actually command non-party witnesses to appear and give testimony at the PI Hearing), TBA, through its attorneys of record in this case, violated Rule 45 of the Federal Rules of Civil Procedure by improperly serving the Non-Party Subpoenas.

150.    It is well-settled that an abuse of process claim may be based on any abusive use of civil litigation procedure, such as a petition, motion, discovery request, deposition, or subpoena.

151.    As demonstrated in above in Paragraphs 71 to 102, TBA, Ogg and Meyer, through their attorneys of record in this case, misused the subpoena power for an ulterior purpose.

152.    TBA, Ogg and Meyer, through their attorneys of record in this case, improperly used the subpoena power in their issuance of the Non-Party Subpoenas for an unintended, malicious, or perverse reason.

153.    The issuance of the Non-Party Subpoenas to Vogt and McDevitt's clients interfered with the business relationships enjoyed by and between Vogt and McDevitt with their clients and harmed those relationships.

154.    Certain recipients of the Non-Party Subpoenas have opted not to transition the management of their investment accounts to Pine Valley Investments for fear of becoming embroiled in this litigation.

155.    The improper issuance of the subpoenas had a chilling effect on the clients' right and decision to choose who they would like to manage their investments, and some of Vogt and McDevitt's clients decided against retaining Vogt and McDevitt as their investment advisor representatives because they did not want to be subpoenaed or become involved in this lawsuit.

156.    As a direct and proximate result of the abuse of the civil litigation process by TBA, Ogg and Meyer, by and through their legal counsel, Vogt and McDevitt have suffered harm and will continue to suffer damages in an amount to be proved at trial.

157.    Based on the foregoing abuse of process by TBA, Ogg and Meyer, Vogt and McDevitt are entitled to an award of damages.

**WHEREFORE,** Defendant/Counter-Claimant/Third-Party Plaintiffs James T. Vogt and Jean McDevitt hereby demand that judgment be entered in their favor and against Plaintiff/ Counter-Defendant Tower Bridge Advisors, Inc. and Third-Party Defendants Maris A. Ogg and James M. Meyer, jointly and severally, on their abuse of process claim, and that they be awarded damages in an amount to be proven at trial, plus punitive damages, pre- and post-judgment interest at the prevailing legal rate, attorneys' fees and cost of suit, and any such other relief as this Court may deem necessary, appropriate and just.

### SIXTH COUNT
### Tortious Interference with Business Relationships and Economic Advantage
*(Vogt and McDevitt v. TBA, Ogg and Meyer)*

158.    Counter-Claimants/Third-Party Plaintiffs Vogt and McDevitt repeat and reallege each of the foregoing paragraphs as if each were fully set forth herein.

159.    At all relevant times, Vogt and McDevitt had established ongoing business relationships, contractual or otherwise, with their clients.

160.    Vogt and McDevitt reasonably expected these relationships with their clients would continue, even after they resigned from TBA to join Pine Valley.

161.    For instance, McDevitt had longstanding relationships with thirty-nine (39) legacy clients that she established, maintained, and existed before she joined TBA in 2007.

162.    After resigning from TBA and joining Pine Valley, 28 of those legacy clients have transitioned the management of their investment accounts to Pine Valley.

163.    Given the longstanding relationships McDevitt had with those clients, which had previously transitioned with McDevitt from Walnut to TBA, McDevitt (and Vogt) reasonably

believed that they would elect to continue their business relationship and engage Pine Valley to serve as their investment advisory firm.

164.    TBA, Ogg and Meyer, acting without privilege, and intending to interfere with and harm those relationships enjoyed by and between Vogt and McDevitt with their clients, engaged in unlawful conduct described herein.

165.    The interference by TBA, Ogg and Meyer in the prospective contractual relationship / continued business relationship between Vogt and McDevitt, on the one hand, and their clients on the other, was improper because the interference was not legitimate business competition, and neither TBA, Ogg nor Meyer had any legal right, privilege, or justification to interfere as they did.

166.    Through the unlawful conduct of TBA, Ogg and Meyer as described herein tortiously interfered with Vogt and McDevitt's existing and prospective business relationships with their clients.

167.    But for the wrongful interference of TBA, Ogg and Meyer, Vogt and McDevitt would have expected their existing client relationships to continue and those clients would contract with Pine Valley to serve as their investment advisory firm, and they would thus receive additional business from those clients in the future.

168.    The tortious interference of TBA, Ogg and Meyer was intentional and improper.

169.    As a direct and proximate result of the unlawful interference of TBA, Ogg and Meyer, Vogt and McDevitt have suffered damages and will continue to suffer damages, including the loss of business relationships and prospective economic gain and advantage, for which TBA, Ogg and Meyer are jointly and severally liable.

170.    TBA, Ogg and Meyer acted willfully, wantonly, and/or with reckless indifference to the harm caused to Vogt and McDevitt.  As a result of their willful, wanton, reckless misconduct of TBA, Ogg and Meyer, punitive damages should be awarded to Vogt and McDevitt.

**WHEREFORE,** Defendant/Counter-Claimant/Third-Party Plaintiffs James T. Vogt and Jean McDevitt hereby demand that judgment be entered in their favor and against Plaintiff/ Counter-Defendant Tower Bridge Advisors, Inc. and Third-Party Defendants Maris A. Ogg and James M. Meyer, jointly and severally, on their tortious interference claim, and that they be awarded damages in an amount to be proven at trial, plus punitive damages, pre- and post-judgment interest at the prevailing legal rate, attorneys' fees and cost of suit, and any such other relief as this Court may deem necessary, appropriate and just

CONSTANGY, BROOKS, SMITH & PROPHETE LLP


By:    _/s/ Benjamin E. Widener_____
                Benjamin E. Widener (ID #202569)

Dated: August 23, 2023



## CERTIFICATION PURSUANT TO RULE 15(a)(3)

The undersigned hereby certifies that this pleading was filed and served within the time period allowed by FED.R.CIV.P. 15(a)(3), as originally permitted, or by extension.


CONSTANGY, BROOKS, SMITH & PROPHETE LLP


By:    _/s/ Benjamin E. Widener_____
                Benjamin E. Widener (ID #202569)

Dated: August 23, 2023

10017283v1

## DEMAND FOR JURY TRIAL

Pursuant to Rules 38(b) and 5(d) of the Federal Rules of Civil Procedure, Defendant/

Counter-Claimant/Third-Party Plaintiffs James T. Vogt and Jean McDevitt hereby demand a trial

by jury in this action.

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

By:    */s/ Benjamin E. Widener*
            Benjamin E. Widener (ID #202569)

Dated: August 23, 2023

## CERTIFICATION OF SERVICE

I hereby certify that on August 23, 2023, I caused this Answer, Affirmative Defenses,

Counterclaims, and Third-Party Complaint of Defendants/Counter-Claimants/Third-Party

Plaintiffs James T. Vogt and Jean McDevitt to be electronically filed with the Clerk of Court and

caused one true copy of such filing to be served via the CM/ECF system and via e-mail upon the

following:

Mark S. Haltzman, Esquire
Kevin D. McGowan, Jr., Esquire
Silverang, Rosenzweig & Haltzman,  LLC
Woodlands Center
900 East 8th Ave., Suite 3000
King of Prussia, PA 19406
MHaltzman@sanddlawyers.com
KMcgowan@sanddlawyers.com
*Attorneys for Plaintiff Tower Bridge Advisors, Inc.*

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

By:    */s/ Benjamin E. Widener*
            Benjamin E. Widener (ID #202569)

Dated: August 23, 2023

10017283v1